IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NICHOLAS KNOPICK,** | : | **Civil No. 09-1287** |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **JOHN J. CONNELLY, JR.; SUSAN M. KADEL; JAMES, SMITH, DURKIN & CONNELLY, LLP; and, PHILIP A. DOWNEY,** | : | **J. RAMBO** |
| Defendants | : | |

## **M E M O R A N D U M**

Before the court is Defendants John J. Connelly, Jr., Susan M. Kadel, and James, Smith, Durkin and Connelly, LLP.'s motion to dismiss, (Doc. 4), Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, Defendants' motion will be granted.

### **I.       Background**

#### **A.  Parties**

Plaintiff Nicholas W. Knopick, a current resident of Arkansas who previously resided in Pennsylvania with his former wife. (Comp. ¶¶ 3, 8, 17). Defendants, relevant to the instant motion, are John J. Connelly, Jr. and Susan M. Kadel– both are attorneys at Defendant firm of James, Smith, Durkin and Connelly,

LLP ("Firm").¹ (*Id.* ¶¶ 4, 5, 6.) Plaintiff previously retained Defendants to represent him in a state court action involving a separation agreement between him and his wife. (*Id.* ¶ 21.)

### B. Facts

On May 11, 1998, Plaintiff separated from his wife pursuant to a Separation and Property Settlement Agreement (the "Agreement") drafted by his attorney at the time. (*Id.* ¶ 8.) Plaintiff maintains that at the time of this Agreement, Ms. Knopick was fully aware of all if his assets, including approximately two million dollars worth of stock. (*Id.* ¶¶ 10, 14.) Plaintiff also contends that Ms. Knopick was aware, at the time of the Agreement, that the stock had little to no value because it was encumbered by a loan. (*Id.* ¶ 14.)

Under the Agreement, Plaintiff retained title to all real estate, assumed all mortgage obligations, and agreed to pay his Ms. Knopick $60,000. (*Id.* ¶ 12.) In addition, each spouse retained their respective personal property and waived any rights to the others' employment benefits. (*Id.* ¶ 13.) Each spouse also waived any rights regarding alimony or support. (*Id.* ¶ 15.)

On July 30, 1999, Plaintiff filed for divorce. (*Id.* ¶ 16.) Despite the Agreement, Ms. Knopick filed for an equitable distribution of the marital assets, alimony, alimony *pendente lite*, and other special relief on August 18, 1999, in the Court of Common Pleas of Perry County, Pennsylvania. (*Id.* ¶ 17.) Ms. Knopick claimed the Agreement was invalid because she was not aware of the two million dollars of stock held by Plaintiff. (*Id.* ¶ 18.) On March 16, 2000, Plaintiff sought

---

¹ Plaintiff also sued Philip Downey, who was Plaintiff's counsel subsequent to Defendants here. Downey filed a motion for summary judgment, (Doc. 15), which will be addressed in a separate opinion.

enforcement of the Agreement in the Perry County Court of Common Pleas.  (*Id.* ¶ 19.)  At issue with the Agreement was whether Plaintiff had provided Ms. Knopick with a full and fair disclosure of his financial assets, including the two million in stock, before she signed the Agreements on May 11, 1998.  (*Id.* ¶ 20.)

On October 31, 2001, Plaintiff retained Defendant Firm, and specifically Attorneys Connelly and Kadel, as his counsel.  (*Id.* ¶¶ 22-24.)  A hearing was to be held on the validity of the Agreement in mid-2004, prior to this date, Ms. Knopick offered to settle the case if Plaintiff would transfer to her $300,000 of his stock.  (*Id.* ¶ 26.)  Plaintiff consulted with Defendant Firm and was assured by Defendant Kadel that the Agreement was valid and that Ms. Knopick was not entitled to more than the $60,000 she already received.  (*Id.* ¶ 27.)  Defendant Kadel further assured Plaintiff that even if the Agreement was found to be invalid, Plaintiff would only have to pay Ms. Knopick the amount that the stock was worth at the time the Agreement was entered into which would have been zero dollars as the stock was encumbered by a two million dollar loan.  (*Id.* ¶ 28.)

On August 2, 2004, a hearing was held in the Court of Common Pleas, Perry County, Pennsylvania, before the Honorable Kathy A. Morrow.  (*Id.* ¶¶ 30, 34.)  Defendant Kadel represented Plaintiff at this hearing.  (*Id.* ¶ 30.)  Plaintiff alleges he informed both Defendant Connelly and Defendant Kadel that the following witnesses would be able to testify that Ms. Knopick was aware of the two million dollars of stock at the time she entered into the Agreement:

> 1) Michael Hanft, Esquire, who represented Plaintiff at the time of the Agreement and who advised both parties of the other's assets.

> 2) Carl Wass, Esquire, who represented Ms. Knopick at the time the Agreement was entered. Attorney Wass advised Ms. Knopick not to sign the agreement and would presumably testify that Ms. Knopick and himself were aware of Plaintiff's assets.
>
> 3) Charles Pegg, the Knopicks' accountant, and his wife Becky Pegg, who would testify they made Ms. Knopick fully aware of the couple's finances every year.

(*Id.* ¶ 32.) Neither Defendant Kadel nor Defendant Connelly called any of these witnesses at the hearing. Afterward, one or both attorneys assured Plaintiff that the hearing had gone well and that he should win. (*Id.* ¶ 33.)

On July 5, 2005, Judge Morrow issued an order invalidating the Agreement finding that Plaintiff had failed to provide Ms. Knopick with a full and fair disclosure of his assets. (*Id.* ¶ 34.) On July 5, 2005, Plaintiff appealed Judge Morrow's decision to the Pennsylvania Superior Court. (*Id.* ¶ 38.) Shortly thereafter, on August 29, 2005, Plaintiff discharged Defendant Firm, Connelly, and Kadel and retained other counsel, suspecting that there might be a malpractice issue regarding Defendants. (*Id.* ¶ 39.)

Because of the 2005 order invalidating the Agreement, the Knopicks agreed that Plaintiff would pay one million dollars to Ms. Knopick and Plaintiff would also transfer eight hundred thousand dollars from his IRA to hers. (*Id.* ¶ 41.) In addition, after the Agreement was invalidated, the bank which authorized the loan based on the two million dollars worth of stock refused to renew the loan the following year, forcing Plaintiff to sell off the stock and causing him to lose millions of dollars in yearly dividends. (*Id.* ¶¶ 42-45.)

On July 31, 2006, Plaintiff contacted Attorney Downey wishing to have his case reviewed for any potential malpractice claims against Defendant Firm, Connelly or Kadel.  (*Id.* ¶ 46.)  Attorney Downey contacted another attorney more versed in domestic relations matters and asked to be apprised of any potential malpractice claims against Defendant Firm, Connelly or Kadel.  (*Id.* ¶ 47.)  This outside attorney rendered a letter dated September 8, 2006 outlining potential legal malpractice claims.  (*Id.*)[2]  No malpractice suit was ever brought against Defendants.

## II.     Procedural History

On July 6, 2009, Plaintiff filed suit in this court against John J. Connelly, Jr., Susan M. Kadel, James, Smith, Durkin and Connelly, LLP, and Philip A. Downey.  (Doc. 1.)  On July 22, 2009, Defendants Firm, Connelly and Kadel filed a motion to dismiss and brief in support.  (Docs. 4, 5.)  Plaintiff responded on August 6, 2009.  (Doc. 6.)  Defendants filed a reply brief on August 12, 2009.  (Doc. 7.)

## III.    Legal Standard

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[2] The remaining facts in the complaint relate to allegations Plaintiff is bringing against Defendant Downey and need not be relayed here as they will be thoroughly discussed in the resolution of Defendant Downey's motion for summary judgment (Doc. 15.)

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007).  *Phillips*, 515 F.3d 224, 233 (3d Cir. 2008).  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007).  *See Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1950.  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v.*

*McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**IV.      Discussion**

Plaintiff couches his claim against Defendants Kadel, Connelly, and the Firm as a breach of contract claim which would be subject to a four-year statute of limitations. Defendants argue that Plaintiff has actually stated a legal malpractice claim and, as such, is subject to a two-year statute of limitations which has already run.[3] The court agrees with Defendants that Plaintiff's complaint states a claim for

---

[3] The parties also dispute when the statute of limitations began to run. Plaintiff argues that it is when Judge Morrow's opinion was issued thereby making his claim timely under the four-year statute of limitations. Defendants claim the statute runs from the date of the hearing when Defendants
(continued...)

legal malpractice, not contract, and is thus outside the two-year statute of limitations period for tort claims.

Under Pennsylvania law, to establish a cause of action for breach of contract, a plaintiff must show: "the existence of a contract to which the plaintiff and defendant(s) were parties, the essential terms of that contract, a breach of the duty imposed by the contract and damages as a result." *Cottman Transmission Sys. v. Melody*, 851 F. Supp. 660, 672 (E.D. Pa. 1994) (citing to *Electron Energy Corp. v. Short*, 597 A.2d 175 (Pa. Super. 1991)).  A plaintiff claiming breach of contract is subject to a four-year statute of limitations.  42 Pa.Cons. Stat. § 5525 (2002).

In contrast, a cause of action for professional negligence under Pennsylvania law requires a plaintiff to establish:

> the defendant owed the plaintiff a duty; the defendant breached the duty; the plaintiff suffered actual harm; and a causal relationship existed between the breach of duty and the harm.  In a professional malpractice action, the determination of whether there was a breach of duty requires the plaintiff to additionally show that the defendant's conduct fell below the relevant standard of care applicable to the rendition of the professional services at issue.

*French v. Commonwealth Assoc.*, 980 A.2d 623, 630-31 (Pa. Super. 2009).  A plaintiff bringing a negligence claim is subject to a two-year statute of limitations.  42 Pa. Cons. Stat. § 5524.

The relevant sections of Count I of Plaintiff's complaint state:

> 57.  When an attorney enters into a contract to provide legal services, there automatically arises a

---

³(...continued)
failed to call key witnesses, making Plaintiff's claim untimely under a four-year statute of limitations.  Because the court finds that a two-year statute of limitations applies to Plaintiff's claim, this issue need not be decided.

8

> contractual *duty* on the part of the attorney to *render those services in a manner that comports with the profession at large*.
> 59. [By entering into a fee agreement] the attorneys and the firm, by implication, agreed to provide Mr. Knopick with *professional services consistent with those expected of the profession at large.*
> 61. [Attorneys Connelly and Kadel] had *a duty* to conduct themselves as *a reasonable attorney* would act.
> 62. Attorneys Connelly and Kadel *owed Mr. Knopick a duty* to possess and employ the *skill and knowledge that ordinarily is employed by a professional*.
> 64. An attorney *exercising the ordinary skill and knowledge of a legal professional* would have investigated and called [the witnesses suggested by Plaintiff at the hearing].
> 65. Attorneys Connelly and Kadel *acted in deviation from the standard of care of a reasonable attorney and breached their duties* they owed to Mr. Knopick.
> 66. Attorney Connelly's and Attorney Kadel's actions were *the proximate cause of Mr. Knopick's harms*, were a substantial factor in bringing about his harms, and significantly increased the risk his harms would occur.
> 67. This failure was a *direct cause* of the July 5, 2005 Order that set aside the Separation Agreement and the unfavorable settlement that resulted from that Order.
> 68. Mr. Knopick would have prevailed in the state court dispute over the Separation Agreement *in the absence of professional negligence* by Attorneys Connelly and Kadel.

(Compl., Doc. 1 (emphasis added).)

These allegations plainly read, employ tort-like language and obligations rather than contract-like obligations, thus, leading the court to conclude that the gist of the action is one of tort not contract. A plaintiff may not couch a professional negligence claim as a breach of contract claim merely to get around the applicable statute of limitations. "Under Pennsylvania law, an 'important limitation on pleading malpractice claims . . . under a contract theory . . . is that a malpractice plaintiff may not sidestep the two-year limitation on tort actions by pleading tort

claims as breaches of contract.'" *Saferstein v. Paul, Mardinly, Durham, James, Flandreau and Rodger, P.C.*, 1997 WL 102521, at *5 (E.D. Pa. 1997), *aff'd* 127 F.3d 1096 (3d Cir. 1997). Moreover, claims do not fall within the four-year contract limitation period merely because a contract may have existed between the parties, or because a contract between a plaintiff and a professional obliged the professional to exercise reasonable care. *Id.* If this were the case the two-year limitation period for professional negligence claims would be a legal nullity. *See id.* (citing *Stetson v. Carty*, Civ. No. 83-6071 (E.D. Pa. 1984), *aff'd* 760 F.2d 261 (3d Cir. 1985). In Pennsylvania, if a plaintiff wishes to bring a professional malpractice claim under a breach of contract theory, "the plaintiff must point to specific contractual obligations that the defendant allegedly violated." *Id.* Plaintiff has failed to do that here, instead, Plaintiff's claim is clearly based on a alleged violation of the standard of care owed by an attorney. Plaintiff points to no specific provision in the contract that he claims was violated and merely rehashes the elements of a claim for professional negligence.[4]

---

[4] The court notes that the language outlined in Count II of the complaint mirrors the language in Count I. However, Count II is a *legal malpractice* claim against Defendant Downey. In addition, Plaintiff sought the counsel of Mr. Downey because he wished to bring a professional malpractice claim against Attorneys Connelly and Kadel and premises his claims against Attorney Downey on the fact that Downey did not advise him of the proper two-year statute of limitations period.

**V.      Conclusion**

Accordingly, the court concludes that Plaintiff's claim is subject to the two-year statute of limitations set forth in 42 Pa.Cons.Stat. § 5524.  Since there is no disagreement between the parties that Plaintiff's claim was brought outside the two-year limitation period, the court will grant Defendants Firm, Kadel and Connelly's motion to dismiss.  An appropriate order follows.

> s/Sylvia H. Rambo
> United States District Judge

Dated:  December 29, 2009.

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NICHOLAS KNOPICK,** | : | Civil No. 09-1287 |
| Plaintiff | : | |
| v. | : | |
| **JOHN J. CONNELLY, JR.; SUSAN M. KADEL; JAMES, SMITH, DURKIN & CONNELLY, LLP; and, PHILIP A. DOWNEY,** | : | **J. RAMBO** |
| Defendants | : | |

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants John J. Connelly, Jr., Susan M. Kadel, and James, Smith, Durkin and Connelly, LLP.'s motion to dismiss is **GRANTED**. The clerk of courts shall terminate these Defendants from the case.

                                                s/Sylvia H. Rambo
                                          United States District Judge

Dated: December 29, 2009.