IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

NICHOLAS KNOPICK,      :

      **Plaintiff**      :     **Civil No. 1:09-CV-1287**

                 :

      **v.**      :

                 :

**PHILIP A. DOWNEY,**      :

      **Defendant[1]**      :     **Judge Sylvia H. Rambo**

                 :

## M E M O R A N D U M

In this civil action invoking this court's diversity jurisdiction under 28 U.S.C. § 1332, Plaintiff has sued, *inter alia*, his former attorney, for legal malpractice related to Defendant's representation of Plaintiff in connection with a prior legal malpractice suit. Presently before the court are two motions, both of which were filed by Defendant. (Docs 49, and 59 & 82.[2]) The first motion, Defendant's second motion for summary judgment (Doc. 49), seeks judgment as a matter of law on the basis that "reasonable minds cannot differ" that Plaintiff's original attorneys, who represented Plaintiff in connection with an action related to a post-nuptial property settlement agreement, did not commit legal malpractice, and thus, there was no viable claim for legal malpractice based upon their representation of Plaintiff. (*See* Doc. 51, p. 7 of 30.) The second motion, Defendant's motion to strike (Docs. 59 & 82), seeks to exclude certain material facts and exhibits offered by Plaintiff in opposition to the motion for summary judgment. For the following

---

[1] The caption is amended to accurately reflect the parties remaining in this action.

[2] Defendant's original motion to strike (Doc. 59) was filed on July 23, 2012. Following Plaintiff's supplemental submissions in opposition to Defendant's motion for summary judgment, Defendant filed an amended motion to strike (Doc. 82). Rather than amending the original motion to strike, the amended motion appears to have supplemented the original motion. Accordingly, the court will address the original motion to strike and the amended motion to strike as a single motion, and will address each argument raised therein.

reasons, the court will grant in part and deny in part Defendant's motion to strike, and will deny Defendant's motion for summary judgment in its entirety.

## I.       <u>Background</u>

Plaintiff initiated this case by filing a complaint on July 6, 2009.  The complaint named as defendants Philip A. Downey, Esquire ("Defendant"), as well as his previous attorneys, John J. Connelly, Jr., Esquire, Susan M. Kadel, Esquire, and James, Smith, Durkin & Connelly, L.L.P., (collectively "Connelly Defendants"). (Doc. 1.)  The complaint alleged that Plaintiff had previously retained the Connelly Defendants to represent him in a state court action against his former wife, Darlene Knopick ("Darlene"), involving a post-nuptial property separation agreement ("PSA") between him and his wife (*Id*. at ¶ 21), and that he retained Defendant in connection with a legal malpractice claim arising therefrom (*Id*. at ¶ 46). Specifically, the complaint brought a breach of contract claim against the Connelly Defendants in connection with their state court representation of Plaintiff in the PSA proceedings, and a legal malpractice and breach of contract claim against Defendant in connection to his failure to adequately prosecute Plaintiff's legal malpractice claim against the Connelly Defendants.  (*See id*.)  On July 22, 2009, the Connelly Defendants filed a motion to dismiss (Doc. 4), and on December 29, 2009, the court granted the Connelly Defendants' motion on the basis that the applicable two-year statute of limitations[3] had expired prior to the July 22, 2009 filing date.  (Doc. 29.) Plaintiff did not file a timely appeal of that ruling.

---

[3]  The court found that the two-year statute of limitations for legal malpractice claims applied to Plaintiff's claim against the Connelly Defendants.  (Doc. 29, pp. 9-10.)

On October 21, 2009, Defendant filed a motion for summary judgment. (Doc. 15.)  Defendant argued that Plaintiff's claims must fail because he and the Connelly Defendants[4] did not cause Plaintiff to suffer economic damages, because the property settlement agreement at issue in the state court proceedings was the product of Plaintiff's own fraud.  (Doc. 17, pp. 5, 11.)  On January 25, 2010, the court granted Defendant's motion for summary judgment on the basis that, due to the application of the occurrence rule, the statute of limitations for Plaintiff to bring a legal malpractice claim against the Connelly Defendants expired on August 2, 2006, two years after the occurrence of the alleged malpractice, which was nearly six months prior to Plaintiff's retention of Defendant in March of 2007.  (Doc. 32, pp. 3, 9 of 13.)  This court found that, because the statute of limitations had run on Plaintiff's claim against the Connelly Defendants prior to Plaintiff's retention of Defendant, Defendant could not be held liable for failing to commence a time-barred action against the Connelly Defendants.  (*See id.*)  Plaintiff appealed that ruling.

Applying the discovery rule instead of the occurrence rule, the United States Court of Appeals for the Third Circuit reversed and remanded, finding that reasonable minds could differ as to whether Plaintiff reasonably knew or should have known of his injury before the Pennsylvania Court of Common Pleas entered its order on the underlying property settlement agreement.  (Doc. 37.)  Thus, the Third Circuit held that it was not clear from the record whether the statute of limitations had expired on Plaintiff's claims against the Connelly Defendants prior to Plaintiff's retention of Defendant.  (*Id.*)

---

[4] At the time of Defendant's filing of his motion for summary judgment, the Connelly Defendants had not yet been dismissed.

Approximately one year following the Third Circuit's mandate, Defendant filed the instant motion for summary judgment, in which he argues that the underlying PSA was invalid on its face, and that the Connelly Defendants' actions could not have changed such a conclusion by the state court. (Doc. 51, p. 29 of 30.) Defendant reasons that, because the Connelly Defendants did not commit malpractice, Defendant could not have committed the same for his failure to timely initiate what would essentially have been an unsuccessful lawsuit against the Connelly Defendants. (*Id.*) On July 9, 2012, Plaintiff filed a brief in opposition (Doc. 57), and an answer to the statement of facts (Doc. 55) with an appendix of exhibits in support thereof (Doc. 56).

On July 23, 2012, Defendant filed a reply (Doc. 58), as well as a motion to strike and brief in support, which sought to strike certain paragraphs of Plaintiff's responsive statement of facts and several exhibits submitted in Plaintiff's opposition to summary judgment (Docs. 59 & 60). Arguing that the exhibits were "riddled with hearsay" and contained "conclusory allegations," and further arguing that the affiants lacked personal knowledge and were, therefore, not competent to testify, Defendant's motion to strike requested that the court exclude the following from Plaintiff's submissions: (1) several paragraphs of Exhibit C, an affidavit of Plaintiff ("Plaintiff's Affidavit"); (2) several paragraphs of Exhibit F, an affidavit of Leonard G. Brown, III, Esquire ("Brown Affidavit"); and (3) the entirety of Exhibit G, an "expert opinion" by N. Christopher Menges, Esquire ("Menges Report"). (Doc. 59.) Furthermore, the motion requested that the court strike the following paragraphs of Plaintiff's responsive statement of material facts: (a) "[Plaintiff] had told his attorneys before-hand that there were multiple witnesses who could have been called

to testify as to [Darlene]'s knowledge of [Plaintiff]'s assets" (Doc. 55, ¶ 9); (b) "These witnesses included: Michael Hanft, [Plaintiff]'s attorney at the time of the signing of the agreement, who would have testified that he advised both parties of each other's assets; Carl Wass, Esquire, who would have testified that he had met with [Darlene] and that Darlene was aware of all of [Plaintiff]'s assets, including his stocks; Charles Pegg, [Plaintiff]'s accountant, and his wife, Becky Pegg, would have testified as to [Darlene]'s knowledge of the stock and its valuation" (*Id*. at ¶ 10); (c) "[Plaintiff] had given Connelly a list of witnesses who could testify to Darlene's knowledge"(*Id*. at ¶ 12); (d) "[Defendant] agreed that there was a valid claim but failed to file suit within the applicable statute of limitations period" (*Id*. at ¶ 17); (e) "[Defendant] failed to file suit within the applicable statute of limitations" (*Id*. at ¶ 21); (f) "And the underlying case was meritorious" (*Id*. at ¶ 22); and (g) "[Plaintiff] has filed with the Court the requisite Certificate of Merit establishing that ' . . . an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill and knowledge expressed or exhibited by this [Defendant] . . . fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm" and "In addition, the testimony of Leonard Brown, Esquire, would establish that [Defendant] was professionally negligent in failing to file suit before the statute of limitations expired. Furthermore, the preliminary expert report of Christopher Menges, Esquire, establishes that the underlying malpractice claim against [the Connelly Defendants] was meritorious" (*Id*. at ¶ 23). (Doc. 60, pp. 6-7.)

In response to the motion to strike, Plaintiff submitted, *inter alia*, a declaration pursuant to Rule 56(d), in which he indicated that discovery had not yet

been completed. (Doc. 62-1.) Following a telephone conference with counsel, the court issued an order staying the disposition of Defendant's motion for summary judgment and motion to strike, and afforded Plaintiff a period of ninety days in which he was to complete discovery. (Doc. 66.) Following the expiration of the ninety-day stay, Plaintiff timely filed an amended brief in opposition to the second motion for summary judgment (Doc. 80) and an amended responsive statement of material facts (Doc. 81) on January 15, 2013.

On January 29, 2013, Defendant filed a supplemental motion to strike and brief in support. (Docs. 82 & 83.) Defendant's amended motion to strike additionally challenged several paragraphs in Exhibit H, the declaration of Becky Pegg. (Doc. 83, pp. 9-12.) The time for responding has passed,[5] and the matter is ripe for disposition.

## II.      Legal Standard

### A.      Summary Judgement Standard

Defendant moves for summary judgment on the basis that the facts of record clearly establish that Plaintiff would have been unsuccessful in the underlying PSA-litigation, regardless of the Connelly Defendants' actions, and therefore, Defendant could not be held liable for legal malpractice for failing to file a lawsuit that was without merit.

Summary judgment is proper when the record, taken in its entirety, shows that there "is no genuine dispute as to any material fact and the movant is

---

[5] Plaintiff failed to respond to the amended motion to strike. Nevertheless, the court will address Defendant's challenges on the merits.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the nonmoving party. *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 545 (3d Cir. 2012) (citing *Liberty Lobby*, 477 U.S. at 257). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmoving party," and draw all reasonable inferences in favor of the same. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "Once the moving party points to evidence demonstrating no issue of material fact exists, the nonmoving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur v. Chase Bank, USA*, 601 F.3d 212, 216 (3d Cir. 2010). The non-movant's burden in defending against summary judgment in a legal malpractice case is no different than any other case, as the nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see*

*also Saldana*, 260 F.3d at 231-32 (citations omitted).  Summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord Ullrich v. U.S. Sec'y of Veterans Affairs*, 457 F. App'x 132, 136 (3d Cir. 2012).  If the nonmoving party's evidence "is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (quoting *Liberty Lobby*, 477 U.S. at 249-50).  However, "[s]uch affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of W. Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

        A court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).  Rather, it remains the "province of the factfinder [at trial] to ascertain the believability and weight of the evidence." *Id.* For purposes of considering a motion for summary judgment, the court "should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, [because] a jury . . . would be entitled to view the evidence as a whole." *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 285 (3d Cir. 2001) (citing *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)).

**B.** <u>**Motion to Strike Standard**</u>

Defendant's motion to strike challenges the admissibility of certain documents relied upon in Plaintiff's brief in opposition, and the pleading of facts in Plaintiff's responsive statement. Defendant contends that the court should not consider these portions of the record when deciding his motion for summary judgment.

Either party may challenge the admissibility of evidence used to support a motion for summary judgment. *See Celotex*, 477 U.S. at 324. Rule 56(c)(2) provides, in pertinent part, that "[a] party may object that the material cited to support or dispute a fact *cannot be presented* in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis supplied). Thus, when the admissibility of evidence is challenged, the party relying on the evidence must demonstrate that such evidence is *capable* of admission at trial before it can be considered by the court on summary judgment. However, this requirement does

> not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses. [Rule 56] permits a proper summary judgment motion to be opposed by any materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing . . . [that specific facts show there is a genuine issue for trial].

*Celotex Corp.*, 477 U.S. at 324; *see also Lin v. Rohm & Haas Co.*, 293 F. Supp. 2d 505, 511 (E.D. Pa. 2003). Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial. *See* Fed. R. Civ. P. 56(c)(2). Accordingly, the party offering the evidence must demonstrate that it could satisfy the applicable admissibility requirements at trial

before the evidence may be used on summary judgment. *See Robinson v. Hartzell Propeller, Inc.*, 326 F. Supp. 2d 631, 643 (E.D. Pa. 2004).

**III.** **Motion To Strike**

Evidence that will be inadmissible at trial can not be considered when ruling on a motion for summary judgment. *See Pamintuan v. Nanticoke Mem. Hosp.*, 192 F.3d 378, 387-88 (3d Cir. 1999); *Sharp v. Pa. Army Nat'l Guard*, Civ. No. 11-CV-1262, 2013 WL 1703583, *3 (M.D. Pa. Apr. 19, 2013). Defendant's motion to strike asserts three separate, yet related, objections to the admissibility of certain documents cited by Plaintiff in his opposition to Defendant's motion for summary judgment. The first contention is that some of the proffered exhibits are hearsay, while others contain multiple layers of hearsay. The second contention is that the proffered exhibits are by affiants that lack personal knowledge. The third contention is that some of the proffered exhibits contain unsupported legal conclusions. These arguments will be addressed in turn.

**A.** **Procedural challenge to the Menges Report**

In his original motion to strike, Defendant argues that the report of N. Christopher Menges, Esquire, who purports to be an expert witness, is not proper evidence and should not be considered in ruling on the summary judgment motion. (*See* Doc. 60, p. 3 of 8.) Although not explicitly stated, it appears Defendant argues that the Menges Report is neither sworn nor subscribed to under the penalty of perjury as provided in 28 U.S.C. § 1746, and must, therefore, be stricken.

The law provides that a party who asserts that a fact is genuinely disputed at the summary judgment stage must cite to specific portions of record,

including depositions, affidavits, or declarations, that support its position. Fed. R. Civ. P. 56(c)(1)(A). The Third Circuit has held that this rule requires expert reports to be sworn to by the expert witness. *See Fowle v. C & C Cola*, 868 F.2d 59, 67 (1989); *see also Jackson v. Egyptian Navigation Co.*, 222 F. Supp. 2d 700, 709 (E.D. Pa. 2002) (excluding an unsworn expert report as incompetent evidence to be considered at the summary judgment stage); *Leo v. State Farm Mut. Ins. Co.*, 939 F. Supp. 1186, 1192 (E.D. Pa. 1996) (stating that an unsworn expert's letter is "not competent to be considered on a motion for summary judgment").

*Fowle* deals with allegations of employment discrimination. In opposing a motion for summary judgment, the plaintiff presented a document that he purported to be a report of an alleged expert. *Id*. at 67. The district court assumed the admissibility of the report and ruled against the plaintiff on the merits. *Id*. The Third Circuit affirmed the judgment against the plaintiff, but refused to consider the expert report because the "substance of [the] report was not sworn to by the alleged expert." *Id*. (citing Fed. R. Civ. P. 56; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970)). While the Third Circuit noted that "evidence should not be excluded on summary judgment on hypertechnical grounds," it was "swayed in [*Fowle*] by the fact that [the] defendants raised this issue in the district court, and [the] plaintiff did nothing to correct the error before that court." *Id*.

Unlike the plaintiff in *Fowle*, in his amended appendix submitted in opposition to Defendant's motion for summary judgment, Plaintiff submitted an affidavit of N. Christopher Menges, Esquire, in which Attorney Menges swears, under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the information provided in his expert report is true and correct, and that he is competent to testify to

the matters contained therein. (Doc. 81-6.) Thus, the court will not strike the Menges Report on this procedural basis.

**B.     Hearsay challenges to contents of Plaintiff's response**

Defendant makes several hearsay challenges to certain documents, or parts thereof, relied upon by Plaintiff in opposition to summary judgment. Hearsay is an out of court statement that is offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Such a statement is inadmissible, unless it falls under a recognized exception to the prohibition against hearsay. Fed. R. Evid. 802. Inadmissible hearsay should not be considered during summary judgment. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009). However, if the statement is capable of being admissible at trial, despite it currently being in an inadmissible form, the statement may be considered for purposes of deciding a motion summary judgment. *Howley v. Experian Info. Solutions, Inc.*, 813 F. Supp. 2d 629, 637 (D.N.J. 2011) (citing *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1235 n. 9 (3d Cir. 1993)); *J.F. Freeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524 (3d Cir. 1990) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 465-66 n. 12 (3d Cir. 1989)).

In order to be considered for summary judgment, the proponent of the alleged hearsay must respond to the hearsay objection by demonstrating that the statement will either be admissible at trial as an exception to hearsay or that the statement is not hearsay. *Bouriez v. Carnegie Mellon Univ.*, Civ. No. 02-CV-2104, 2005 WL 2106582, *5 (W.D. Pa. Aug. 26, 2005) (citing *Burgess v. Allstate Ins. Co.*, 334 F. Supp. 2d 1351 (N.D. Ga. 2003)). This rule requires the proponent to demonstrate that there is more than a "mere possibility that the evidence will be

admissible at trial." *Id.* (citing *Henry v. Colonial Banking Co. of Dothan*, 952 F. Supp. 744 (M.D. Ala. 1996)). This may be demonstrated by the proponent showing some likelihood that the declarant will appear and testify at trial. *Howley*, 813 F. Supp. 2d at 637.

Defendant makes specific hearsay objections to the following submissions: several paragraphs from Plaintiff's responsive statement of material facts; several paragraphs from Plaintiff's Affidavit (Exhibit C); and two paragraphs from the affidavit of Becky Pegg (Exhibit I) ("Becky Pegg Affidavit"). Furthermore, Defendant claims that the Brown Affidavit (Exhibit F) and the Menges Report (Exhibit G) are "riddled with hearsay," but fails to specify which paragraphs allegedly contain hearsay.[6] For the following reasons, the court will grant in part and deny in part the motion as it pertains to the foregoing hearsay objections.

### 1. Hearsay challenges to portions of Plaintiff's responsive statement of material facts

Defendant challenges the admissibility of portions of Paragraphs 9, 10, 12, and 23 contained in Plaintiff's responsive statement of material facts on the basis of hearsay. Paragraph 9 of Plaintiff's responsive statement of material facts states, in pertinent part, as follows: "[Plaintiff] had told his attorneys before-hand that there were multiple witnesses who could have been called to testify as to [Darlene]'s

---

[6] Defendant requests the court strike Paragraphs 12, 13, 14, 15, and 16 of the Brown Affidavit and the entirety of the Menges Report. The court has examined paragraphs 12, 13, 14, 15, and 16 of the Brown Affidavit and finds no basis for a hearsay objection. It has been said that "judges are not archeologists. They need not excavate masses of papers in search of revealing tidbits–not only because the rules of procedure place the burden on the litigants, but also because their time is scarce." *N.W. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994). Because Defendant does not point to exactly which paragraphs from the Menges Report contain hearsay, the court will not parse through the report in an attempt to create a particularized hearsay objection. Accordingly, Defendant's motion to strike the Menges Report on the basis of hearsay will be denied.

knowledge of [Plaintiff]'s assets." (Doc. 55, ¶ 9.)[7]  Paragraph 10 names the

witnesses referenced in the preceding paragraph, and describes the purported content

of their testimony.  (*Id*. at ¶ 10.)  The challenged portion of Paragraph 12 provides:

"[Plaintiff] had given Connelly a list of witnesses who could testify to Darlene's

knowledge."  (*Id*. at ¶ 12.)

      The court does not agree that the portions of Paragraphs 9 and 12

challenged by Defendant contain inadmissible hearsay.  Paragraph 9 describes an

interaction Plaintiff had with the Connelly Defendants, and, although it includes

Plaintiff's out-of-court statement to his attorneys, Plaintiff will likely testify at trial.

Therefore, the court will deny Defendant's motion to strike Paragraph 9.  Likewise,

the court is unable to agree that the cited portion of Paragraph 12 contains hearsay.

Plaintiff's production of a list of potential witnesses is non-assertive conduct

presumably made in an attempt to advance his case, rather than a statement under

Federal Rule of Evidence 801(a).

      The court agrees with Defendant that Paragraph 10 contains hearsay,

insofar as it purports to represent the subject matter of several non-party witnesses,

including Michael Hanft, Plaintiff's attorney at the time of the signing of the

agreement, Carl Wass, an attorney who allegedly met with Darlene regarding the

property settlement agreement, and Charles and Becky Pegg, who allegedly would

have testified as to Plaintiff's knowledge of the stock and its valuation.  To overcome

a motion to strike, Plaintiff must show more than the mere possibility that the

---

[7] Defendant claims that Paragraph 9 contains double hearsay.  Rule 803 permits the introduction of double hearsay if each part has an independent basis for admission.  Fed. R. Evid. 805.

statement would be presented in an admissible form at trial. *See Howley*, 813 F. Supp. 2d at 637.

Plaintiff asserts that he intended to call these witnesses at trial, and that he provided this list of names to his attorney. From these four witnesses, Plaintiff only submits a sworn affidavit of Becky Pegg, thus supporting the portion of Paragraph 10 that relates to Becky Pegg's testimony. (*See* Doc. 81-3.) Defendant claims that Hanft is now deceased and that Wass's testimony will be barred by the attorney-client privilege. Plaintiff has not presented evidence to the contrary, and consequently, has not met his burden of showing more than a mere possibility that the evidence would be admissible at trial. Accordingly, Defendant's motion to strike Paragraph 10 will be denied with regard to the testimony of Becky Pegg, but will be granted with regard to the testimony of Hanft, Wass, and Charles Pegg.

Paragraph 23 of Plaintiff's responsive statement provides as follows:

> [Plaintiff] has filed with the court the requisite Certificate of Merit establishing that ". . . an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill and knowledge expressed or exhibited by [Defendant] . . . fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm" [and that] . . . the testimony of Leonard Brown, Esquire, would establish that [Defendant] was professionally negligent in failing to file suit before the statute of limitations expired. Furthermore, the preliminary expert report of Christopher Menges, Esquire, establishes that the underlying malpractice claim against [the Connelly Defendants] was meritorious.

(Doc. 55, ¶ 23 (citations omitted).) Defendant claims that these statements contain hearsay. Although the court agrees that these statements contain hearsay, Plaintiff has provided the sworn declarations Attorney Brown and Attorney Menges, both of which indicate that an admissible form will be presented at trial. Accordingly,

15

Defendant's motion to strike will be denied as it pertains to Paragraph 23 of Plaintiff's responsive statement of material facts.

## 2. <u>Hearsay challenges to the Plaintiff's Affidavit</u>

Defendant's motion to strike challenges the admissibility of Plaintiff's testimony regarding assertions contained in the following paragraphs of his affidavit:

<u>Paragraph 5</u>: When Darlene was first presented with the Separation and Property Settlement Agreement, she told me that she had been advised by an attorney not to sign the Agreement. At the time, neither Mr. Hanft nor I had any knowledge as to the identity of Darlene's attorney. However, Darlene would take the Agreement with her, keep it for a period of time and then return it with changes. These changes would include a lot of legal language that was not part of Darlene's vocabulary.

<u>Paragraph 6</u>: Later, I discovered that Darlene had consulted with Carl Wass, Esquire.

<u>Paragraph 8</u>: [Darlene] was fully aware of all stock valuations and my financial situation. Darlene had complete access to all financial matters, and she was present and participated in conversations concerning these financial matters and had complete disclosure.

<u>Paragraph 9</u>: Messrs. Hanft and Pegg, as well as Charles Pegg's wife, Becky, were eye witnesses to this disclosure.

<u>Paragraph 12</u>: Before the hearing I had given [Connelly] a list of witnesses who could substantiate my claim that Darlene was aware of all of our assets, including my stock. He told me that he was going to contact the witnesses on the list, including Carl Wass, Charles Pegg and Michael Hanft.

<u>Paragraph 13</u>: Also, prior to the hearing, Darlene's counsel had offered to settle the case for $300,000 in UPS stock. Based upon what [the Connelly Defendants] told me, I rejected the offer. [Kadel] indicated that we had a lot of evidence, including tax returns. She sent a letter to Darlene's counsel rejecting the offer and indicating that we had a lot of evidence to support our position.

Paragraph 14: On the date of the hearing, I expected [Connelly] to represent me and was surprised that only [Kadel] was present. When I asked about the witnesses, [Kadel] told me that it was not necessary for Connelly to be there, that all they had to do was show the Court the tax records and that would be all that was needed.

Paragraph 15: Following the hearing, I spoke directly with [Connelly] about why he was not at the hearing. He told me the hearing was not a big deal and that "any competent attorney could handle it."

Paragraph 16: Following the hearing, [Connelly] continued representing me in other hearings dealing with custody, support and other issues related to the divorce.

Paragraph 18: After the hearing on August 2, 2004, I asked [Kadel] how the hearing went, and she told me there was no problems, that it had gone well.

Paragraph 19: Several times over the next months, I spoke with [Connelly] and [Kadel] and, every time, they told me that there was nothing to worry about and that the hearing had gone well.

Paragraph 20: On July 7, 2005, Judge Morrow ruled against me. I do not remember the exact date I received the Order, but [Connelly] called me the day he received the Order. He told me that Judge Morrow had overturned the Agreement and that [Kadel] was preparing an appeal. I remember [Connelly] saying at either in that hearing or later, "Don't worry, we will ride this out to the end" or words to that effect.

Paragraph 21: Later, I received a call from [Kadel] saying that the appeal had been filed. These conversations occurred before I received Judge Morrow's Order. She said she was stunned by Judge Morrow's decision.

Paragraph 24: [Defendant] was recommended to me as an attorney familiar with legal malpractice. I first met [Defendant] on July 28, 2006 to discuss a legal malpractice action.

Paragraph 25: On August 9, 2006 I met Albert Momjian, Esquire, at [Defendant]'s request and, in fact, [Defendant] went to the meeting with me. [Defendant] described him as

an expert and I spoke with him about appealing Judge Morrow's Order.

Paragraph 27: After meeting with Mr. Momjian, [Defendant] continued to represent me and I met with him on a number of occasions. [Defendant] told me on a number of times that we had a good malpractice case.

Paragraph 28: [Defendant] had been working with me for months, but on March 30, 2007, he asked me to sign a retained agreement to represent me in the malpractice claim against Kadel and Connelly, and I agreed and signed the agreement. A copy of our retainer agreement is attached to the Complaint as Exhibit "E."

Paragraph 29: In conversation with [Defendant], [Defendant] repeatedly told me that I had a good case. In fact, [Defendant] told me that he was filing suit in the matter and that he had retained an expert to represent me.

Paragraph 31: I provided [Defendant] with the names of the witnesses that he said should have been called at the hearing.

Paragraph 32: [Defendant] remained as my attorney until February 25, 2008, at which time he discharged me as a client. Prior to the February 25, 2008, letter that he sent to me, he had always maintained that the case was a good case that I should win.

Paragraph 33: I gave [Defendant] the names of my witnesses even before I formally retained him.

Paragraph 34: When I met with [Defendant] in March of 2007, he told me that he was filing suit, and I paid him the retainer fee requested so that he could file suit. It was not until after [Defendant] discharged me as a client that I learned he had not filed suit.

(Doc. 60, pp. 5-6; Doc. 56-3.) After review, the court concludes that certain statements contained in Paragraphs 5, 12, 14, 20, and 21 of Plaintiff's Affidavit contain hearsay, and that Plaintiff has failed to indicate that he will present the content in an admissible form should the case go to trial. Accordingly, the court will strike the following portions of the challenged paragraphs in Plaintiff's Affidavit:

Paragraph 5: ". . . [Darlene] told me that she had been advised by an attorney not to sign the Agreement."

Paragraph 12: "[Connelly] told me that he was going to contact the witnesses on the list, including Carl Wass, Charles Pegg and Michael Hanft."

Paragraph 14: "[Kadel] told me that it was not necessary for Connelly to be there, that all they had to do was show the Court the tax records and that would be all that was needed."

Paragraph 20: "[Connelly] told me that Judge Morrow had overturned the Agreement and that [Kadel] was preparing an appeal. I remember [Connelly] saying at either in that hearing or later, 'Don't worry, we will ride this out to the end' or words to that effect.'"

Paragraph 21: "[Kadel] said she was stunned by Judge Morrow's decision."

As to the balance of Defendant's motion to strike pertaining to portions of Plaintiff's Affidavit, the court concludes that the statements contained in paragraphs 6, 8, 9, 13, 16, 24, 25, 27, 28, 29, 31, 32, 33, and 34 either do not contain inadmissible hearsay or qualify for a hearsay exception. Specifically, Paragraphs 6, 8, 9, 16, and 24 do not contain hearsay. Only hearsay *statements*, as defined by the Federal Rules of Evidence, are inadmissible. *See* Fed. R. Evid. 801(c). The Rules define a statement as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a). Performative actions are not "statements" for hearsay purposes. *See* Fed. R. Evid. 801(a). All of the aforementioned paragraphs contain descriptions of nonverbal conduct that are performative rather than assertive. Accordingly, the hearsay challenges to Paragraphs 6, 8, 9,16, and 24 of Plaintiff's Affidavit will be denied.

Moreover, the court declines to strike Paragraphs 13, 15, 18, and 19. Although these paragraphs do contain hearsay, Rule 803(3) permits their admission.

The Federal Rules of Evidence allow the introduction of "a statement of the declarant's then-existing state of mind (such as motive, intent, or plan)." Fed. R. Evid. 803(3). Statements admitted under Rule 803(3) offered to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan." *United States v. Donley*, 878 F.2d 735, 738 (3d Cir. 1989). However, "statements that are considered under . . . the state of mind exception, cannot be offered to prove the truth of the underlying facts asserted." *United States v. Hernandez*, 176 F.3d 719, 727 (3d Cir. 1999) (quoting *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1274 (3d Cir. 1995)). In other words, statements that tend to prove the declarant's intent or state of mind regardless of the underlying truth are admissible, whereas statements that tend to prove the truth of the fact remembered are inadmissible. *Knit With v. Knitting Fever, Inc.*, 742 F. Supp. 2d 568, 582 (E.D. Pa. 2010) (citing *Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 531 (D. Del. 2009)).

Paragraph 13 sets forth Plaintiff's reason for rejecting the settlement offer, and provides, in pertinent part, as follows:

> Based upon what Connelly and Kadel told me, I rejected the offer. [Kadel] indicated that we had a lot of evidence, including tax returns.

(Doc. 56-3, ¶ 13.) The statements by Connelly and Kadel may be used to provide a basis for Plaintiff's rejection of the settlement offer, his then-existing intent.[8]

An integral issue in this case relates to the date on which Plaintiff knew, or through reasonable diligence should have known, of his injury. Paragraphs 15,

---

[8] To be clear, the hearsay statements allowed under the then-existing mental condition exception cannot be considered for their truth. *Bell Helicopter*, 623 F. Supp. 2d at 531 (citing *Hernandez*, 176 F.3d at 726-27); *see also Stelwagon Mfg.*, 63 F.3d at 1274.

18, and 19 each provide an arguable justification for Plaintiff's delay in discovering his injury due to the Connelly Defendant's alleged malpractice. Specifically, each of the challenged paragraphs relate to assurances Plaintiff received regarding the success of the August 2, 2004 state court proceeding. Although Paragraphs 15, 18, and 19 may not be used to prove the truths of the matters asserted therein, they may be used to explain the basis for Plaintiff's delay in discovering his injury, whether such delay was reasonable, and whether the statute of limitations was tolled. Accordingly, the court will deny the motion to strike Paragraph 13, 15, 18, and 19 of Plaintiff's Affidavit on the basis of hearsay.

Although Paragraphs 25, 27, 28, 29, 31, 32, 33 and 34 also contain what may otherwise qualify as hearsay, the contents of those paragraphs are admissible insofar as they qualify as an opposing party's statement. Statements offered against an opposing party and "made by the party in an individual or representative capacity" are exempt from the rule prohibiting hearsay. Fed. R. Evid. 801(d)(2)(A). Each of the above-mentioned paragraphs contain Defendant's own statements. Because Plaintiff offers these statements against Defendant, they are not hearsay pursuant to Rule 801(d)(2)(A). For this reason, the court will deny the motion to strike Paragraphs 25, 27, 28, 29, 31, 32, and 34 of Plaintiff's Affidavit on the basis of hearsay.

### 3. Hearsay challenges to the Becky Pegg Affidavit

Defendant asserts a hearsay challenge to the admissibility of certain paragraphs contained in the Becky Pegg Affidavit. After a thorough review, the court concludes that neither Paragraph 4 nor Paragraph 5 of her affidavit contains hearsay. Paragraph 4 states, "I was present and witnessed Charles [Pegg] meeting

with [Plaintiff] and [Darlene] to conduct accounting for them and review financial matters," and Paragraph 5 states, "[Plaintiff] and [Darlene] sat at a table with Charles [Pegg] and me in our home, where data was reviewed, and questions were asked and answered." (Doc. 81-3, ¶¶ 4 & 5.) The nonverbal act of sitting down with Charles Pegg to review data, conduct accounting, and review financial matters is not assertive conduct. These paragraphs merely describe non-assertive conduct which does not qualify as a statement for hearsay purposes. Accordingly, the court will deny Defendant's motion to strike Paragraphs 4 and 5 of the Becky Pegg Affidavit.[9]

## C. Lack of personal knowledge challenges to contents of Plaintiff's response

Federal Rule of Evidence 602 governs the scope of a witness's testimony. Rule 602 permits a witness to "testify to a matter only if sufficient evidence is introduced to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Rule 602 creates a low threshold of admissibility; witness testimony should be admitted if the judge could reasonably

---

[9] As to Defendant's contention that the court should strike Paragraph 3 of the Becky Pegg Affidavit on the basis of relevance, the court reminds Defendant that relevant evidence is evidence that has any tendency to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Defendant's argument that Paragraph 3 has "no relevant evidentiary value" entirely disregards Plaintiff's position that, despite his not making a full disclosure at the time the PSA was executed, Darlene was otherwise well apprised of the value of the stock. The court directs Defendant's attention to Pennsylvania case law providing that, where the circumstances indicate that a spouse has knowledge of the general value of the couple's assets, a marital settlement agreement will be upheld, especially where the agreement recites that full and fair disclosure was made. *See, e.g., Paroly v. Paroly*, 876 A.2d 1061, 1066 (Pa. Super. Ct. 2005). The Becky Pegg Affidavit directly relates to whether Darlene was familiar with the couple's assets. Accordingly, her affidavit, relating to her observations of Darlene's participation in discussions wherein she was provided with the disclosure of assets, is highly relevant to whether the Connelly Defendants committed legal malpractice by failing to call her as a witness at the August 2, 2004 hearing.

find that the witness perceived the event. *Sullivan v. Warminster Twp.*, 461 F. App'x 157, 162 (3d Cir. 2012). However, this should not extend so far as to allow witness testimony that is merely based on speculation as to what a third party believed or knew. *See Palfrey v. Jefferson-Morgan Sch. Dist.*, Civ. No. 06-CV-1372, 2008 WL 4412230, *12 (W.D. Pa. Sept. 25, 2008).

Conversely, expert witnesses do not need to have personal knowledge in order to testify to a matter. *Compare* Fed. R. Evid. 703 *with* Fed. R. Evid 602. Federal Rule of Evidence 703 states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

In the instant case, Defendant presents only vague objections for lack of personal knowledge. As to Plaintiff's Affidavit, Defendant makes only a cursory claim that Paragraphs 6, 13, 14, 15, 16, 18, 19, 20, 21, 24, 25, 27, 28, 29, 31, 32, 33, and 34 of Plaintiff's Affidavit "state hearsay and/or lack personal knowledge."[10] In addition, Defendant claims that both expert reports upon which Plaintiff relies, namely those of Attorney Brown[11] and Attorney Menges, lack the affiants's personal

---

[10] Although Defendant does not specify which paragraphs of Plaintiff's Affidavit he believes lack personal knowledge, the court reviewed each of the aforementioned paragraphs.

[11] Defendant presents a specific challenge to the propriety of Paragraphs 8, 12, and 13 of Attorney Brown's expert report, arguing that those paragraphs lack any personal knowledge.

knowledge and should, consequently, be stricken in their entirety. The court does not agree.

### 1. Lack of knowledge challenges to Plaintiff's Affidavit

Upon consideration of the portions of Plaintiff's affidavit challenged by Defendant on the basis of lack of knowledge, the court concludes that only Paragraphs 8 and 13 contain statements that are arguably outside the scope of Plaintiff's personal knowledge. Paragraph 8 states, in pertinent part, as follows: "[Darlene] was fully aware of all stock valuations and my financial situation." (Doc. 56-3, ¶ 8.) Taken in insolation, this statement appears to amount to mere speculation as to Darlene's knowledge of the finances. However, the paragraph continues to explain the basis for Plaintiff's statement: "[Darlene] had complete access to all financial matters, and she was present and participated in conversations concerning these financial matters and had complete disclosure." (*Id*.)

Viewing these sentences in tandem, it is clear that Paragraph 8 sets forth Plaintiff's opinion as to his former wife's knowledge, which is based on his personal observation of Darlene witnessing conversations related to the couple's financial matters. Thus, the later statement establishes the reason Plaintiff believed Darlene was fully aware of all stock evaluations and financial matters, namely that he observed her participate in conversations concerning financial matters. Pursuant to Federal Rule of Evidence 701, lay opinions "rationally based on the witness's perception" are admissible if helpful to the jury in determining a fact in issue. Fed. R. Evid. 701. Plaintiff's opinion relates to whether Darlene was familiar with the marital assets and appears to be based on his perceptions, and would be helpful to the trier of fact in determining whether the Connelly Defendants committed legal

malpractice by failing to present sufficient evidence to establish Darlene's knowledge, which Plaintiff is required to prove in his case against Defendant. Therefore, the court will deny Defendant's motion to strike Paragraph 8 of Plaintiff's Affidavit.

Paragraph 13 of Plaintiff's Affidavit states, in pertinent part, "[Kadel] sent a letter to Darlene's counsel rejecting the offer and indicating that we had a lot of evidence to support our position." (Doc. 56-3, ¶ 13.) The court is not convinced such a statement is outside his personal knowledge. At the time of the statement, Kadel was acting as Plaintiff's attorney. It can certainly be assumed that Plaintiff's rejection of a settlement offer was done at his direction, or at least with his consultation. *See* Pa. R.P.C. 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."). Given the low threshold of admissibility under Federal Rule of Evidence 602, the court will deny Defendant's motion to strike Paragraph 13 of Plaintiff's Affidavit.

### 2. Lack of knowledge challenges to the Brown Affidavit

Plaintiff objects on the basis of lack of personal knowledge to three distinct paragraphs of the Brown Affidavit. Specifically, Plaintiff objects to Paragraph 8, wherein Attorney Brown states that his knowledge is based on a review of the pleadings, and Paragraphs 12 and 13, because Attorney Brown sets forth his understanding of the facts of the case without describing his personal knowledge underlying those facts.

The court concludes both arguments are without merit. Attorney Brown will likely be offered as an expert witness.[12] The Federal Rules of Evidence expressly permit an expert witness to base his or her opinion upon information that he or she had been "made aware of." *See* Fed. R. Evid. 703. Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit. *See Paul J. Muller Assocs., Inc. v. TransAmerica Occidental Life Ins.*, Civ. No. 90-CV-3128, 1992 WL 96283, *1 (E.D. Pa. Apr. 23, 1992). There is no requirement for an expert witness to have, let alone describe, his or her knowledge of the facts based upon personal observation. Nor would the expert offer the basis for his opinion for its truth. *See* Fed. R. Evid. 703 ("[I]f the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."). Accordingly, the court will deny Defendant's motion to strike the Brown Affidavit, or any portion thereof, for lack of personal knowledge.

### 3.  Lack of knowledge challenges to the Menges Report

Similarly, Defendant challenges the admissibility of the Menges Report, and moves to strike the document in its entirety. Defendant argues that the report is inadmissible because Attorney Menges's basis for his report is based upon his review of the complaint and its exhibits, rather than his personal knowledge. For the

---

[12] The first seven paragraphs of the Brown Affidavit set forth the basis of Attorney Brown's ability to give an opinion, including his educational and professional background, bar memberships, publications, and participation in legal seminars.

same reasons the court will deny the motion to strike the Brown Affidavit, *see supra* Part III.C.2, the court will deny the motion to strike the Menges Report.

**D.** **Legal conclusions challenges to contents of Plaintiff's response**

Opinion testimony, whether by a lay or expert witness, is limited to testimony that is helpful to the jury to understand the evidence presented or to determine a fact in issue. *See* Fed. R. Evid. 701; Fed. R. Evid. 702. Because the jury does not decide questions of law, legally conclusive statements are not helpful to the jury, and thus, inadmissible at trial or at summary judgment. *VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 428 n. 4 (W.D. Pa. 1998) (quoting *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997)). A legally conclusive statement is a statement in which the law is applied to the facts. *Transportes*, 623 F. Supp. 2d at 533.

Although testimony regarding duty and breach of care requires the application of facts to law, a plaintiff may supply expert testimony on the issue to establish a breach of the duty of care owed in a legal malpractice claim. *See Gans v. Mundy*, 762 F.2d 338, 341-42 (3d Cir. 1985). The court may inquire into the reliability and foundation of any expert opinion to determine admissibility, but the weakness of the factual support for an expert's opinion is not a proper basis for exclusion. *In re Tire Worker Asbestos Litig.*, Civ. No. 88-CV-4702, 1991 WL 152606, *3 (E.D. Pa. Aug. 1, 1991) (citing *DeLuca v. Merrell Dow Pharm.*, 911 F.2d 941, 953 (3d Cir. 1990)); *see also Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). Generally, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and

should be left for the jury's consideration. *Hill v. Lamanna*, Civ. No. 03-CV-0323, 2007 WL 777007, *12 (W.D. Pa. Mar. 12, 2007) (citing *Viterbo*, 826 F.2d at 422).

Defendant objects to Paragraphs 17, 21, 22, and 23 of Plaintiff's responsive statement of material facts for containing unsupported legal conclusions. (Doc. 60, p. 7.) Defendant further objects to paragraphs 14, 15, and 16 of the Brown Affidavit and the Menges Report based on Attorney Brown and Attorney Menges's failures provide a basis for the expert conclusions. (*Id*. at p. 2.) These objections will be addressed in turn.

### 1. Improper legal conclusion challenges to Plaintiff's responsive statement of material facts

Defendant moves to strike Paragraphs 17, 21, 22 and 23 of Plaintiff's responsive statement of material facts, arguing each paragraph contains unsupported legal conclusions. (*Id*. at p. 7.) Paragraphs 17 and 21 state that Defendant "failed to file suit within the applicable statue of limitations period." (*See* Doc. 56, ¶¶ 17, 21.) Paragraph 17 further states that "[Defendant] agreed that there was a valid claim." (*Id*. at ¶ 17.) Paragraph 22 states that "the underlying case was meritorious." (*Id*. at ¶ 22.) Paragraph 23 states that Plaintiff filed the requisite Certificate of Merit, and describes the expert testimony. (*Id*. at ¶ 23.)

After a thorough consideration of each paragraph, the court concludes that none of these paragraphs contain *unsupported* legal conclusions. Plaintiff's statement that Defendant "agreed there was a valid claim" is Plaintiff's recitation of what he was told, rather than a legal conclusion.[13] Furthermore, although legally conclusive, Plaintiff's statements are each supported by expert testimony. As further

---

[13] Such a statement qualifies as an admission by a party-opponent. *See supra* III.B.2.

explained below, Plaintiff may use expert testimony to establish duty and breach in a legal malpractice case. *See Gans*, 762 F.2d at 341-42. Accordingly, the court will not strike Paragraphs 17, 21, 22 and 23 of Plaintiff's responsive statement of material facts for containing unsupported legal conclusions.

### 2. Improper legal conclusion challenges to the Brown Affidavit

Defendant challenges the admissibility of certain paragraphs contained in the Brown Affidavit, arguing that Paragraphs 14, 15, and 16 set forth unsupported legal conclusions. (Doc. 60, p. 2.) The challenged paragraphs state Attorney Brown's professional opinion regarding the date on which the statute of limitations began to run, Defendant's duty to file a malpractice action against the Connelly Defendants, and Defendant's violation of the standard of care, respectively. (Doc. 56-6.) The court will not strike the aforementioned paragraphs, because it finds that the opinions contained therein are arguably supported and admissible. Accordingly, the court will deny Defendant's motion to strike on the basis of unsupported legal conclusions as it pertains to any paragraph contained in the Brown Affidavit.

### 3. Improper legal conclusion challenges to the Menges Report

Defendant challenges the admissibility of the last paragraph contained in the Menges Report, arguing that the paragraph fails to provide an explanation for

Attorney Menges's opinion.[14]  (Doc. 60, p. 2.)  The last paragraph in Attorney

Menges's report provides as follows:

> Accordingly, I am of the opinion, to a reasonable degree of professional certainty that [the Connelly Defendants] failed to exercise the degree of skill, care and knowledge required of attorneys in the Commonwealth of Pennsylvania, as set forth hereinabove, and that same has caused [Plaintiff] at least $1.8 Million Dollars of damages, and very possibly additional damages once more documentation and/or evidence has been produced.

(Doc. 56-7, p. 10 of 10.)  The challenged paragraph follows nine pages of Attorney

Menges's explanation of the duty of care that attorneys in the Commonwealth of

Pennsylvania owe to their clients, and an application of the duty of care to the facts

of the case as understood by Attorney Menges.  (*Id.*)  Thus, the court finds the

opinion contained in the final paragraph is supported and admissible, and concludes

that Defendant's challenge on this basis is entirely without merit.  For the same

reasons the court will deny striking paragraphs contained in the Brown Affidavit, *see*

*supra* Part III.D.2, the court will deny Defendant's motion to strike any portion of

the Menges Report.


## E.    Conclusion as to Motion To Strike

For the foregoing reasons, the court will grant-in-part and deny-in-part

Defendant's motion to strike.  Accordingly, for purposes of the motion for summary

judgment, the court will consider the entire record, except for the statements

---

[14]  Defendant originally objected to Attorney Menges's report as unsworn and for failing to set out the affiants's qualifications to render an expert opinion.  In his supplemental submission in opposition to summary judgment, Plaintiff submitted the curriculum vitae and declaration pursuant to 28 U.S.C. § 1746 of N. Christopher Menges, Esquire. (*See* Doc. 81-6.)  Thus, Plaintiff's latest submission has mended the procedural defect, and Defendant's challenge in this regard is deemed moot. *See supra* Part III.A.

contained in Paragraph 10 of Plaintiff's responsive statement, that relate to the alleged testimony of Hanft, Wass, and Charles Pegg, and the following portions of Plaintiff's affidavit: (a)". . . [Darlene] told me that she had been advised by an attorney not to sign the Agreement," as contained in Paragraph 5 (Doc. 56-3, ¶ 5); (b) "[Connelly] told me that he was going to contact the witnesses on the list, including Carl Wass, Charles Pegg and Michael Hanft," as contained in Paragraph 12 (Doc. 56-3, ¶ 12); (c) "[Kadel] told me that it was not necessary for Connelly to be there, that all they had to do was show the Court the tax records and that would be all that was needed," as contained in Paragraph 14 (Doc. 56-3, ¶ 14); (d) "[Connelly] told me that Judge Morrow had overturned the Agreement and that [Kadel] was preparing an appeal. I remember [Connelly] saying at either in that hearing or later, 'Don't worry, we will ride this out to the end' or words to that effect," as contained in Paragraph 20 (Doc. 56-3, ¶ 20); and (e) "[Kadel] said she was stunned by Judge Morrow's decision," as contained in Paragraph 21 (Doc. 56-3, ¶ 21). An appropriate order will be entered.

## IV.      Motion for Summary Judgment

In considering the instant motion for summary judgment, the court relied on the uncontested facts or, if the facts were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to Plaintiff as the nonmoving party. *See Doe v. C.A.R.S. Prot. Plus*, 527 F.3d 358, 362 (3d Cir. 2008).

A. **Facts**

The underlying action to the instant legal malpractice case implicated the validity of a post-nuptial property settlement agreement, and presented the issue of whether Plaintiff had made a full and fair disclosure of his assets, namely UPS and OPL stock,[15] in his property settlement agreement with his then-wife, Darlene.  Prior to her separation from Plaintiff, Darlene had met with Plaintiff's accountant, Charles Pegg.  (Doc. 56-3, ¶¶ 7-8.)

Plaintiff and Darlene executed the PSA on May 11, 1998,[16] at which time Plaintiff was represented by Attorney Michael Hanft, who had drafted the PSA.  (Doc. 50, ¶¶ 3, 6; Doc. 55, ¶¶ 3, 6; Doc. 56-3, ¶ 4.)  Darlene consulted with an attorney regarding the terms contained in the PSA.  (Doc. 56-3, ¶¶ 5-6.)  The property settlement agreement contained three provisions pertinent to the underlying action: 1) Article 3.4, which stated that "[Darlene] waives any right or interest she may have in [Plaintiff]'s employment benefits, including any retirement plan, stock option purchase plan, profit sharing plan or related matters"; 2) Article 7.1, which stated that the couple had either "retained independent legal counsel" who have either fully explained the provisions of the PSA, or that the spouse waived his or her right to legal advice; and 3) Article 7.10, which stated that the couple "represent that they have made full disclosure of assets."  (Doc. 56-1.)

In 2004, nearly six years after the date of separation (Doc. 56-3, ¶ 10), Darlene filed an action  in the Perry County Court of Common Pleas seeking to

---

[15] The UPS and OPL stock had a combined value of between $1.36 and $1.598 million dollars at the time the PSA was signed.  (Doc. 50, ¶ 7(g); Doc. 55, ¶ 7(g).)

[16]  Michael Hanft, drafted the PSA and represented Plaintiff at the time.  Hanft is now deceased.  (Doc. 50, ¶ 6; Doc. 55, ¶ 6.)

invalidate the PSA, on the basis of fraud for Plaintiff's lack of full and fair disclosure. (*See* Doc. 51-2.) Plaintiff retained the Connelly Defendants to represent him in the matter. (Doc. 56-3, ¶ 10.) Prior to a hearing, Plaintiff presented the Connelly Defendants with a list of witnesses "who could substantiate [his] claim that Darlene was aware of [the couple's] assets, including [his] stock." (*Id.* at ¶ 12.) Also prior to the hearing, Darlene's counsel offered to settle the case for $300,000.00 in UPS stock. (*Id.* at ¶ 13.) Based on the advice of the Connelly Defendants, Plaintiff rejected Darlene's offer. (*Id.* at ¶ 13.)

Only Kadel appeared to represent Plaintiff's at the August 2, 2004 hearing. (Doc. 56-3, ¶ 14.) Plaintiff testified on his own behalf, but Kadel did not present the testimony of the witnesses that Plaintiff had provided to the Connelly Defendants. (*See* Doc. 55, ¶ 13.) Nevertheless, the Connelly Defendants told Plaintiff they were confident that the PSA would be upheld, and assured him that the judge would rule in his favor. (Doc. 55, ¶ 13.) The Connelly Defendants' continued to communicate their confidence to Plaintiff over the next several months. (Doc. 56-3, ¶ 19 ("Several times over the next months, I spoke with [the Connelly Defendants] and, every time, they told me that there was nothing to worry about and that the hearing had gone well.").) The Connelly Defendants continued to represent Plaintiff in connection with other hearings related to the divorce. (Doc. 56-3, ¶ 16.) On July 7, 2005,[17] the Honorable Kathy A. Morrow resolved the issue in favor of Darlene, finding the agreement was invalid due to "fraud for lack of full disclosure on [Plaintiff]'s part." (Doc. 51-2.) The Connelly Defendants indicated to Plaintiff that

---

[17] Although the order invalidating the PSA is dated July 5, 2005, the date of filing appears to be July 7, 2005. (Doc. 51-2.)

33

they would file an appeal on his behalf to the Pennsylvania Superior Court. (Doc. 55, ¶ 15.) As a result of the PSA's invalidation, Plaintiff and Darlene proceeded to an equitable distribution hearing. (*Id.*) Sometime between July 7, 2005, and the date of the equitable distribution hearing, Plaintiff discharged the Connelly Defendants for reasons related to the "custody aspect of the case." (Doc. 55, ¶ 16; *See also* Doc. 56-3, ¶ 22.) Plaintiff ultimately settled the equitable distribution claims by agreeing to pay Darlene $1,800,000.00 without further hearing. (Doc. 55, ¶ 18.)[18]

On March 30, 2007, Plaintiff retained Defendant to represent him in a legal malpractice action against the Connelly Defendants. (Doc. 55, ¶¶ 18, 19; Doc. 56-4.) The basis of Plaintiff's action related to the Connelly Defendants' failure to call the four witnesses to testify as to Darlene's knowledge, which amounted to legal malpractice. (Doc. 55, ¶ 17.) Although Defendant initially informed Plaintiff that he had a valid claim for legal malpractice against the Connelly Defendants, Defendant failed to initiate the action prior to the expiration of the applicable statute of limitations. (*Id.* at ¶ 21.)

In his motion for summary judgment, Defendant maintains that there was no meritorious legal malpractice claim against the Connelly Defendants because failing to call the four witnesses could not affect the outcome of the underlying case. (*See* Doc. 51.) In support of his position, Defendant argues, *inter alia*, that Plaintiff admitted in court that he never told Darlene the amount or value of shares (Doc. 50, ¶ 7(a)), that Plaintiff failed to discuss or attach his 1998 quarterly dividend reports to the PSA (*Id.* at ¶ 7(b)), and that Plaintiff never shared copies of the UPS or OPL

---

[18] Plaintiff claims that, had Judge Morrow declared the PSA to be valid, Plaintiff would have only been required to pay $60,000.00 to Darlene. (Doc. 55, ¶ 16.)

stock statements with Darlene (*Id.* at ¶ 7(d)). All of these admissions are disputed by Plaintiff. (*See* Doc. 55, ¶¶ 7(a), (b) & (d).) Defendant reasons, therefore, that he cannot be liable for malpractice as a matter of law for failing to file a lawsuit that would have been ultimately unsuccessful. (*See* Doc. 51.) Plaintiff maintains, and the record reflects same, that Plaintiff testified during the PSA litigation that Darlene was aware of the stock and their approximate value. (*See* Doc. 56-2, pp. 112, 191, 193.) Furthermore, although Plaintiff admits he never shared the most recent stock statement because it was unavailable at the time the PSA was drafted (*Id.* at pp. 120-21, 192), Plaintiff testified at the August 2, 2004 hearing that he shared the previous stock statement with Darlene (*Id.* at pp. 121, 193).

### B. Legal Standard

As a federal court sitting in diversity, the court applies Pennsylvania law to Plaintiff's legal malpractice claim. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Nat'l Grange Mut. Ins. Co. v. Goldstein, Heslop, Steel, Clapper, Oswalt & Stoehr*, 142 F. App'x 117, 120 (3d Cir. 2005) (applying *Erie* to legal malpractice claims under Pennsylvania law); *see also Javaid v. Weiss*, Civ. No. 4:11-CV-1084, 2011 WL 6339838, *7 (M.D. Pa. Dec. 19, 2011).

### 1. Legal malpractice

In order to recover damages in a legal malpractice claim under Pennsylvania law, a plaintiff must prove the following three elements: 1) employment of attorney or other basis for duty; 2) the attorney's failure to exercise ordinary skill and knowledge; and 3) that the attorney's action was the proximate cause of the damage to the plaintiff. *Javaid*, 2011 WL 6339838 at *7; *Kituskie v. Corbman*, 714 A.2d 1028, 1029 (Pa. 1998). Moreover, "[a]n essential element to

this cause of action is proof of actual loss rather than a breach of professional duty causing only nominal damages, speculative harm[,] or threat of future harm." *Kituskie*, 714 A.2d at 1030.

Beyond a showing that the defendant-lawyer's representation was deficient, "a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case." *Id*. Thus, "a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have prevailed in the underlying action," before reaching the attorney's alleged failure to exercise ordinary skill and knowledge. *Id*. It is only after the plaintiff "proves he would have recovered a judgment in the underlying action that the plaintiff can proceed with proof that the attorney he engaged to prosecute . . . the underlying action was negligent." *Id*.

The facts of this case actually require Plaintiff to prove a case within a case within a case. Plaintiff must prove by a preponderance of the evidence that he would have succeeded in his malpractice claim against the Connelly Defendants in order to succeed in his malpractice action against Defendant. This requires Plaintiff to prove that he would have succeeded in proving that Darlene had full and fair disclosure of all assets prior to the drafting of the PSA but for the negligence of the Connelly Defendants, specifically the failure to call witnesses that could have testified as to Darlene's knowledge.

2.      **Property settlement agreements**

It is well-settled law in Pennsylvania that a husband and wife are free to determine their property rights and support obligations by contract. *See* 23 Pa.C.S. § 3105. Moreover, property settlement agreements are presumed to be valid and binding on the parties, and parties will generally be bound by their agreements, absent proof of fraud, misrepresentation, or duress. *See Sabad v. Fessenden*, 825 A.2d 682, 688 (Pa. Super. Ct. 2003) (citing *Mormello v. Mormello*, 682 A.2d 824, 826 (Pa. Super. Ct. 1996), *rev'd on other grounds by Stoner v. Stoner*, 819 A.2d 529 (Pa. 2003)). Thus, a court views a property settlement agreement as it would a contract, but it has neither the power nor authority to modify the agreement unless there is conclusive proof of fraud or mistake. *See Cullen v. Cullen*, 71 Pa. D. & C. 4th 69, 75 (Pa. Com. Pl. Monroe Cnty. 2004).

In *Simeone v. Simeone*, 581 A.2d 162 (Pa. 1990), the Pennsylvania Supreme Court reaffirmed the "longstanding principle that a full and fair disclosure of the financial positions of the parties is required. Absent this disclosure, a material misrepresentation in the inducement for entering a prenuptial agreement may be asserted." *Id*. at 167. Directly applicable herein is the Pennsylvania Supreme Court's admonishment that "if an agreement provides that full disclosure has been made, a presumption of full disclosure arises. If a spouse attempts to rebut this presumption through an assertion of fraud or misrepresentation, then this presumption can be rebutted if it is proven by clear and convincing evidence." *Id*.

Whether adequate disclosure has been made will depend on the facts and circumstances of the individual case. *Paroly v. Paroly*, 876 A.2d 1061, 1066 (Pa. Super. Ct. 2005) (citing *Mormello*, 682 A.2d at 827). An agreement is valid even if it does not contain financial disclosure itself and can be upheld if it merely

recites that such disclosure has been made. *Id*. (citing *In re Estate of Hartman*, 582 A.2d 648 (Pa. Super. Ct. 1990) (holding marital settlement agreement not invalid because it did not contain parties' respective financial disclosure as it stated that disclosure was made and the fact that such disclosure was made was affirmed by testimony of scrivener)). A disclosure need not be exact, so long as it is full and fair. *Simeone*, 581 A.2d at 167. Rather, a disclosure must be sufficient to allow the intended party to make an informed decision. *Busch v. Busch*, 732 A.2d 1274, 1278 n.5 (Pa. Super. Ct. 1999) (citing *Gula v. Gula*, 551 A.2d 324, 327 (Pa. 1988)). When a spouse is fully engaged in the couple's financial affairs and is familiar with a business owned by the other spouse, Pennsylvania courts will uphold an agreement even when it contains neither disclosure nor an affirmation that disclosure had been made. *Paroly*, 876 A.2d at 1066 (citing *Adams v. Adams*, 607 A.2d 1116 (Pa. Super. Ct. 1992)). Stated quite simply, where the circumstances indicate that a spouse has knowledge of the general value of the couple's assets, an agreement will be upheld, especially where the agreement recites that full and fair disclosure was made. *Id.* at 1067.

## C.    Discussion

The essence of Plaintiff's claim in the underlying PSA-litigation was that, although the PSA itself did not contain a full and fair disclosure, Darlene was otherwise familiar with the couple's assets. Plaintiff reasons that, had the Connelly Defendants called Becky Pegg, who would have testified to her observations of Darlene's participation in conversations regarding the couple's assets, the PSA would not have been invalidated and he would not have had to settle the case for $1,800,000.00. It follows that Plaintiff may have succeeded on his legal malpractice

claim against the Connelly Defendants for their improper handling of the PSA litigation had Defendant filed an action before the statute of limitations expired.

In his motion for summary judgment, Defendant argues that the witnesses Plaintiff intended to call could not have changed the outcome of the August 2004 hearing because Judge Morrow found that a full and fair disclosure had not been made as a matter of law. Defendant reasons that the witnesses' testimony would not have produced a different result. In the alternative, Defendant argues that Plaintiff made a series of judicial admissions, specifically that he never personally disclosed the amount and values of the UPS or OPL stock to Darlene, which required Judge Morrow to find that full and fair disclosure had not been made. The court is not persuaded by either argument.

Plaintiff's testimony, that he failed to personally disclose the amount and values of the stock to Darlene at the time of the PSA, does not compel Judge Morrow's conclusion that the PSA was invalid as a matter of law. Under Pennsylvania law, disclosure of the exact amount and value of property may not be required in order for a PSA to be valid where the spouse is well aware of the couple's assets and values thereof. *See Simeone*, 581 A.2d at 167. Rather, the disclosure must be adequate in order to permit the other party to make an informed decision. *Id*. Becky Pegg's testimony, as set forth in her affidavit, indicating that she personally observed Darlene being apprised of the value of the stock, may have been persuasive for the trier of fact to conclude that Darlene was adequately aware of the couple's finances. Whether Becky Pegg's testimony would have actually led to a different outcome is a question for the trier of fact, determination of which requires a weighing of the evidence. Thus, a genuine issue of material fact remains on whether

Plaintiff could have been successful on the underlying PSA-litigation had the Connelly Defendants called Becky Pegg as a witness, and thus, a question remains as to whether Plaintiff would have succeeded in a legal malpractice action against the Connelly Defendants for their failure to do so.

The court is also not persuaded by Defendant's argument that Judge Morrow was not bound to consider the full and fair disclosure clause in the PSA. Under Pennsylvania law, the full and fair disclosure clause is what gives rise to the presumption of full and fair disclosure. *Id*.; *see also Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002). When a disclosure clause is present, a court is bound to accept that full and fair disclosure was made, absent a showing of fraud, duress, or misrepresentation. *Simeone*, 581 A.2d at 165. The party asserting that fraud, duress, or misrepresentation was present bears the burden of proof by clear and convincing evidence. *Id*. at 167. Witness testimony that Darlene was aware of the stock, and the approximate value thereof, may have acted as a counterweight against any evidence Darlene put forth to prove fraud. This presents a genuine issue of material fact.

Because genuine issues of material fact exist as to whether the Connelly Defendants committed malpractice by failing to call Becky Pegg as a witness, there also exists a genuine issue of material fact as to whether Defendant's failure to file a legal malpractice claim against the Connelly Defendants within the applicable statute of limitations was also the proximate cause of Plaintiff's damages. Accordingly, Defendant's motion for summary judgment will be denied.

**V.**       **<u>Conclusion</u>**

        For the foregoing reasons, the court finds that there are genuine issues of material fact remaining as to Plaintiff's legal malpractice claim against Defendant. Therefore, the court will deny Defendant's motion for summary judgment.

        An appropriate order will issue.

    s/Sylvia H. Rambo         
United States District Judge

Dated:  May 6, 2013.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS KNOPICK, | : | Civil No. 1: 09-CV-1287 |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| PHILIP A. DOWNEY, | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendant** | : | |

# O R D E R

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED** that Defendant's Second Motion for Summary Judgment (Doc. 49) is **DENIED.**

_s/Sylvia H. Rambo_
United States District Judge

Dated: May 6, 2013.