IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICHOLAS KNOPICK, | : | |
| **Plaintiff** | : | **Civil No. 1:09-CV-1287** |
| | : | |
| **v.** | : | |
| | : | |
| PHILIP A. DOWNEY, | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendant** | : | |

# M E M O R A N D U M

In this civil action invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, Plaintiff filed a complaint alleging that two groups of attorneys committed legal malpractice related to their representations of Plaintiff in connection with a property settlement agreement and legal malpractice action arising therefrom. Presently before the court are two motions. (*See* Docs. 94 & 96.) The first motion, filed by Plaintiff, requests that the court reconsider its December 29, 2009 order dismissing the Connelly Defendants. (Doc. 96.) The second motion, filed by Defendant Downey, requests the court enter judgment in his favor on the basis that he was not the proximate cause of Plaintiff's harm. (Doc. 94.) Both motions rely, in part, on a December 20, 2012 Pennsylvania Superior Court decision, *Coleman v. Duane Morris, LLP*, 58 A.3d 833 (Pa. Super. Ct. 2012). For the following reasons, the court will deny both motions.

## I. <u>Background</u>

At the heart of the instant motions is this court's December 29, 2009 order granting the Connelly Defendant's motion to dismiss. (Doc. 29.) In reaching its conclusion, the court found that Plaintiff's complaint failed to adequately plead a breach of contract action for legal malpractice, but adequately pleaded a cause of action arising in professional negligence. (*Id*. at p. 9 of 12.) Finding that the gist of

the action against the Connelly Defendants was subject to a two-year statute of limitations that had expired before Plaintiff commenced this lawsuit, the court dismissed the Connelly Defendants from the matter.

A.  **Facts**[1]

On May 11, 1998, Plaintiff separated from his wife pursuant to a Property Settlement Agreement ("PSA") drafted by his attorney at the time.  (Doc. 1, ¶ 8.)  Plaintiff alleged that, at the time he and his wife entered into the PSA, his wife was fully aware of all his assets, which included approximately $2 million worth of stock.  (*Id.* at ¶¶ 10, 14.)  Plaintiff also alleged that his wife was aware, at the time of the PSA, that the stock was encumbered by a loan.  (*Id.* at ¶ 14.)

On July 30, 1999, Plaintiff filed for divorce.  (*Id.* at ¶ 16.)  Despite the existence of the PSA, Plaintiff's wife filed for, *inter alia*, an equitable distribution of the marital assets in the Court of Common Pleas of Perry County, Pennsylvania (*Id.* at ¶ 17), claiming that the PSA was invalid because she was unaware of the two million dollars of stock held by Plaintiff (*Id.* at ¶ 18).  On October 31, 2001, Plaintiff retained the Connelly Defendants as his counsel.  (*Id.* at ¶¶ 21-24.)  Prior to a hearing on the validity of the PSA, Plaintiff's wife offered to settle the case if Plaintiff would transfer to her $300,000.00 of his stock.  (*Id.* at ¶ 26.)  The Connelly Defendants assured Plaintiff that the PSA was valid and that his wife was not entitled to more than the $60,000.00 she already received.  (*Id.* at ¶ 27.)  The Connelly Defendants further assured Plaintiff that, even if the PSA was found to be

---

[1]  The background of this matter has been recited in the court's December 29, 2009 memorandum and order dismissing the Connelly Defendants (*see generally* Doc. 29, pp. 2-5 of 12), and the court's May 6, 2013 memorandum and order denying Defendant Downey's second motion for summary judgment (*see generally* Doc. 88, pp. 32-35 of 42).  Nevertheless, the court reproduces herein the pertinent facts as set forth in the pleadings and relevant to the instant motion.

invalid, Plaintiff would only have to pay his wife the amount that the stock was worth at the time the PSA was executed, which would have been zero dollars because the stock was encumbered by a $2 million loan. (*Id.* ¶ 28.)

On August 2, 2004, a hearing was held in the Court of Common Pleas of Perry County, Pennsylvania, before the Honorable Kathy A. Morrow. (*Id.* at ¶¶ 30, 34.) Plaintiff alleged that, prior to this date, he informed the Connelly Defendants that several witnesses were available to testify that his wife was aware of the stock at the time she entered into the PSA. (*Id.* at ¶ 32.) None of these witnesses were called at the hearing. (*Id.* at ¶ 31.) Afterward, the Connelly Defendants assured Plaintiff that the hearing had gone well and that he should win. (*Id.* at ¶ 33.)

On July 5, 2005, Judge Morrow issued an order invalidating the PSA finding that Plaintiff had failed to provide his wife with a full and fair disclosure of his assets. (*Id.* at ¶ 34.) On August 29, 2005, Plaintiff discharged the Connelly Defendants. (*Id.* at ¶ 39.)

On July 31, 2006, Plaintiff contacted Attorney Downey wishing to have his case reviewed for any potential malpractice claims against the Connelly Defendants. (*Id.* at ¶ 46.) Defendant Downey contacted the Connelly Defendants, requesting information regarding their representation of Plaintiff at the August 2, 2004 hearing. (*See id.* at Ex. D.) On March 30, 2007, Defendant Downey and Plaintiff entered into a contingent fee agreement. (*Id.* at Ex. E.) The scope of the agreement provided that "[Plaintiff] retains [Defendant Downey] to institute, prosecute, negotiate and compromise claims or actions as may be deemed advisable by [Defendant Downey] in [Plaintiff]'s best interest to recover damages from [the

Connelly Defendants].” (*Id.*)  Defendant Downey never filed a malpractice suit against the Connelly Defendants (*Id.* at ¶ 51), and on February 25, 2008, Defendant Downey informed Plaintiff that he would not pursue a legal malpractice claim against the Connelly Defendants because Plaintiff was “limited to a claim for breach of contract” and that the statute of limitations on that claim was two-years, which had begun to run on August 2, 2004, when the Connelly Defendants failed to call potentially relevant witnesses at the hearing (*Id.* at Ex. F).

## B.    Procedural History

Plaintiff initiated this case by filing a complaint on July 6, 2009.[2]  The complaint named two sets of defendants, and brought, what Plaintiff labeled as, a breach of contract claim against the Connelly Defendants in connection with their state court representation of Plaintiff in the PSA proceedings (Count I), and a legal malpractice (Count II) and breach of contract claim (Count III) against Defendant Downey in connection with his failure to adequately prosecute Plaintiff’s legal malpractice claim against the Connelly Defendants.  (*See* Doc. 1.)  Plaintiff set forth the following in support of his breach of contract claim against the Connelly Defendants:

> 57.  When an attorney enters into a contract to provide legal services, there automatically arises a contractual *duty* on the part of the attorney to *render those services in a manner that comports with the profession at large*.
>
> *     *     *

---

[2]  Relevant to the instant motions, the court notes that the civil cover sheet, as completed by Plaintiff’s counsel, invoked the court’s diversity jurisdiction and indicated the nature of the suit as one in tort, not contract.  (*See* Doc. 1-3.)

59. [By retaining the Connelly Defendants], the [Connelly Defendants], by implication, agreed to provide [Plaintiff] with *professional services consistent with those expected of the profession at large.*

`                                             *    *    *

61. [The Connelly Defendants] had *a duty* to conduct themselves as *a reasonable attorney* would act.

62. [The Connelly Defendants] *owed [Plaintiff] a duty* to possess and employ the *skill and knowledge that ordinarily is employed by a professional.*

*    *    *

64. An attorney *exercising the ordinary skill and knowledge of a legal professional* would have investigated and called [the witnesses suggested by Plaintiff at the hearing].

65. [The Connelly Defendants] *acted in deviation from the standard of care of a reasonable attorney and breached their duties* they owed to [Plaintiff].

66. [The Connelly Defendants]'s actions were *the proximate cause of [Plaintiff]'s harms*, were a *substantial factor in bringing about his harms*, and significantly increased the risk his harms would occur.

67. This failure was a *direct cause* of the July 5, 2005 Order that set aside the [PSA] and the unfavorable settlement that resulted from that Order.

68. Plaintiff would have prevailed in the state court dispute over the [PSA] *in the absence of professional negligence* by [the Connelly Defendants].

(Doc. 1, ¶¶ 57, 59, 61, 62, 64-68 (emphasis added).)

On July 22, 2009, the Connelly Defendants filed a motion to dismiss

(Doc. 4), which the court granted on December 29, 2009, on the basis that the

applicable two-year statute of limitations[3] had expired prior to the complaint's July 22, 2009 filing date. (Doc. 29.) In arriving at its decision, the court found that, despite Plaintiff labeling Count I as breach of contract against the Connelly Defendants, the allegations contained therein were more properly asserted as an action sounding in tort rather than contract. Specifically, the court reasoned:

> These allegations, plainly read, employ tort-like language and obligations rather than contract-like obligations, thus, leading the court to conclude that the gist of the action is one of tort not contract.

(*Id.* at p. 9 of 12.) Thus, although the court recognized that a plaintiff may bring a malpractice claim under both contract and tort theories of liability, it held that Plaintiff's claim arose in tort, and applied Pennsylvania's two-year statute of limitations applicable to malpractice tort claims, 42 Pa. Cons. Stat. Ann. § 5524, rather than the four-year statute of limitations applicable to contract claims, 42 Pa. Cons. Stat. Ann § 5525. (*See id.*) Plaintiff neither sought to file an amended complaint properly stating a viable cause of action for breach of contract nor appealed the court's ruling.

On October 21, 2009, Defendant Downey filed a motion for summary judgment on the two claims asserted against him, namely the legal malpractice claim at Count II and breach of contract claim at Count III. (Doc. 15.) Defendant Downey argued that he was entitled to judgment in his favor because he and the Connelly Defendants did not cause Plaintiff to suffer economic damages, reasoning that the PSA at issue in the state court proceedings was the product of Plaintiff's own fraud.

---

[3] The court found that the two-year statute of limitations for legal malpractice claims applied to Plaintiff's claim against the Connelly Defendants. (*See* Doc. 29, pp. 9-10.)

(Doc. 17, pp. 5, 11 of 15.) On January 25, 2010, the court granted Defendant

Downey's motion for summary judgment on the basis that the two-year statute of

limitations applicable to a legal malpractice claim sounding in negligence had

expired. (Doc. 32.) Similar to its reasoning for dismissing the Connelly

Defendants, the court found that, despite Plaintiff labeling Count III as breach of

contract against Defendant Downey, the allegations contained therein were more

properly asserted as an action arising in tort rather than contract. (*Id.* at pp. 12-13 of

14.) Specifically, the court reasoned:

> Count Three of the complaint clearly sound[s] in tort, not
> contract. Plaintiff discusses the standard of care owed by
> an attorney, not a breach of specific terms of the
> contingent fee agreement. . . . . Merely reciting the
> language "specific terms of the contract" without citing
> *which* terms the parties breached, is insufficient. . . . [I]t is
> not the court's role to parse through the document to
> ascertain which provision Defendant potentially breached.

(Doc. 32, pp. 11-13 of 14 (emphasis in original) (footnote omitted).) The court then

applied the occurrence rule and found that the statute of limitations for Plaintiff to

bring the legal malpractice claim asserted against the Connelly Defendants expired

on August 2, 2006, two years after the occurrence of the alleged malpractice, which

was nearly six months prior to Plaintiff's retention of Defendant Downey in March

2007. (*See* Doc. 32, pp. 3, 9 of 13.) The court reasoned that, because the statute of

limitations had run on Plaintiff's claim against the Connelly Defendants prior to

Plaintiff's retention of Defendant Downey, Defendant Downey could not be held

liable for failing to commence a time-barred action against the Connelly Defendants.

(*See id.*) Plaintiff appealed that ruling. (*See* Doc. 34.)

Applying the discovery rule instead of the occurrence rule, the United States Court of Appeals for the Third Circuit reversed and remanded, finding that reasonable minds could differ as to whether Plaintiff reasonably knew or should have known of his injury before the Perry County Court of Common Pleas entered its order on the underlying property settlement agreement. (Doc. 37.) Thus, the Third Circuit held it was not clear from the record whether the statute of limitations had expired on Plaintiff's tort claim against the Connelly Defendants prior to Plaintiff's retention of Defendant Downey. (*Id*.) To be clear, the Third Circuit did not determine the date on which the action against the Connelly Defendants accrued; rather, it determined that "reasonable minds could disagree in determining whether [Plaintiff] knew or should have known, through the exercise of reasonable diligence, of his alleged injury as early as August 2, 2004, the date of the hearing." (Doc. 37-1, p. 27 of 28.) Nor did the Third Circuit consider whether Plaintiff adequately asserted a breach of contract claim, because, as the Court noted, "[Plaintiff] acknowledged at oral argument that he . . . abandoned his contract claim." (*Id*. at p. 9 n. 8 of 28.) In short, the Third Circuit held that this court erred in finding, as a matter of law, that the limitations period in Plaintiff's tort claim was triggered as of the August 2, 2004 county court hearing.

On remand, Defendant Downey filed a second motion for summary judgment on June 18, 2012 (Doc. 49), in which he argued that the underlying PSA was invalid on its face, and that the Connelly Defendants could not have changed such a conclusion by the county court, regardless of their actions at the August 2, 2004 hearing. (*See* Doc. 51, p. 29 of 30.) Defendant reasoned that, because the Connelly Defendants did not commit malpractice, he could not have committed the

same for his failure to timely initiate what would essentially have been an unsuccessful lawsuit against the Connelly Defendants. (*Id*.) Following the lifting of a stay imposed at Plaintiff's request, the court denied Defendant Downey's motion on May 6, 2013, finding that a genuine issues of material fact existed as to whether the Connelly Defendants committed malpractice by failing to call a certain witness who would have provided a basis for the county court to find that Plaintiff's wife was adequately aware of the couple's finances. (Doc. 88.)

On June 17, 2013, Defendant Downey filed a motion for judgment on the pleadings. (Doc. 94.) Defendant Downey's motion requested judgment in his favor on the basis that *Coleman*, a December 20, 2012 Pennsylvania Superior Court decision, made clear that Plaintiff had a viable claim against the Connelly Defendants for all of his alleged harm at the time Plaintiff filed suit against Defendant Downey. (*Id*. at p. 2 of 12.) Therefore, Defendant Downey reasons, he cannot be the proximate cause of Plaintiff's harm. (*Id*.)

On June 19, 2013, Plaintiff filed a response in opposition to Defendant Downey's motion (Doc. 98), as well as a motion for reconsideration related to the court's December 29, 2009 dismissal of the Connelly Defendants (Doc. 96). In his motion, Plaintiff argues *Coleman* "held that a plaintiff may assert a breach of contract action sounding in legal malpractice using the four year statute of limitations for breach of contract actions." (Doc. 98, p. 8 of 23.) Plaintiff reasons that the *Coleman* decision is an "intervening change in controlling law, reveals the need to correct a legal error, and creates a need to prevent manifest injustice." (*Id*. at p. 9 of 23.) The Connelly Defendants oppose Plaintiff's motion. (Docs. 101 & 104-1.) The matter has been adequately briefed, and is ripe for disposition.

**II.**          **Discussion**

As stated, *Coleman* finds its way to the heart of both parties' motions. While the court agrees that the Pennsylvania Superior Court's holding in *Coleman* may have changed the legal landscape of legal malpractice actions sounding in breach of contract in Pennsylvania, the changes are beyond the scope of this matter, and *Coleman* provides the parties no relief.[4]

**A.**    ***Coleman***

In *Coleman*, the plaintiffs' business had accumulated $2.16 million in unpaid employment taxes. *Coleman v. Duane Morris, LLP*, No. 0917, 2011 WL 5838278 (Pa. Com. Pl. Phila. Cnty. Nov. 4, 2011) ("*Coleman I*"). The Internal Revenue Service held the plaintiffs personally liable for the debt. *Id.* In an effort to eliminate the personal liability, the plaintiffs agreed to sell the stock in their business to another company willing to assume the outstanding tax liability. *Id*. The plaintiffs hired the defendant attorneys to help negotiate the sale. *Id*. The plaintiffs claimed they were assured that their personal liability for unpaid taxes

---

[4]  Because the court will deny the parties' motions on other grounds, it need not forecast the position of the Pennsylvania Supreme Court based on the intermediate appellate court's holding in *Coleman*, 58 A.3d at 836. *See Clark v. Modern Group, Ltd.*, 9 F.3d 321, 327 (3d Cir. 1993). The court notes, however, that the Pennsylvania Supreme Court granted allowance of appeal on June 13, 2013. *See Coleman v. Duane Morris, LLP*, No. 48 EAL 2013, 2013 WL 2662660 (Pa. June 13, 2013). The issue to be addressed by the Pennsylvania Supreme Court was stated as follows:

> Does the limitation on damages in a legal malpractice action sounding only in contract set forth in *Bailey v. Tucker*, 533 Pa. 237, 252, 621 A.2d 108, 115 (1993) – which limited such damages to "the amount actually paid for the services plus statutory interest" in a case involving an underlying criminal representation – apply where the underlying representation is a civil one?

*Id.* (granting allowance of appeal). Thus, whether the Pennsylvania Supreme Court would in fact restrict *Bailey*'s limitation on damages to just the criminal context may not be as clear as the parties represent. (*See, e.g.,* Doc. 98, p. 20 of 23 ("If the Pennsylvania Supreme Court were to squarely address the issue … the Pennsylvania Supreme Court would likely reach the same result.").)

would terminate upon sale of the stock. *Id*. Several months after closing, the plaintiffs learned that, despite the transfer of 100-percent of the stock, they remained personally liable for the taxes. *Id.*

The plaintiffs filed a legal malpractice claim, sounding in breach of contract and not professional negligence, against the defendants, seeking to recover damages based on the value of the stock, claiming it was sold in exchange for a promise of release from tax liability that they did not receive. *Id*. The defendants filed judgment on the pleadings, arguing that, based upon *Bailey v. Tucker*, 621 A.2d 108 (Pa. 1993), the plaintiffs had not suffered any recoverable damages under Pennsylvania law because the plaintiffs did not pay for their legal services.

Relying on *Bailey v. Tucker*, 621 A.2d 108 (Pa. 1993), the trial court granted the defendants' motion for judgment on the pleadings, finding that *Baily* limited damages for all breach of contract legal malpractice actions to legal fees paid by the client plus statutory interest. *Coleman I*, 2011 WL 5838278; *see also Coleman v. Duane Morris, LLP*, 58 A.3d 833, 836 (Pa. Super. Ct. 2012) ("*Coleman II*"). In so reasoning, the trial court applied the limitation on damages set forth in *Bailey*, a malpractice action arising from an attorney's representation of a criminal defendant, to the civil context. *Coleman I*, 2011 WL 5838278. On appeal, the plaintiffs argued that, under governing contract law, they were entitled to consequential damages for breach of contract. *Coleman II*, 58 A.3d at 836. In reversing the trial court and concluding that the defendants were not entitled to judgment on the pleadings, the Superior Court declined to follow *Bailey*, holding instead that "the limitation on damages imposed by the *Bailey* Court applied to an action in assumpsit based on a claim of attorney malpractice in a criminal case, but

11

that [the] limitation [did] not extend to an action for legal malpractice in assumpsit where the underlying action was . . . a civil action." *Id*. at 838. The court refused to distinguish breach of contract damages in a legal malpractice action from breach of contract damages in other civil cases. *Id*. at 838-39. Thus, the Superior Court held that damages recoverable in a contract-based civil attorney malpractice action were not limited solely to legal fees paid. *Id*. Such a holding may be significant, but not to the matter *sub judice*.

**B.     The Motions**

The court will first resolve Plaintiff's motion for reconsideration and will then address Defendant Downey's motion for judgment on the pleadings.

**1.     Motion for Reconsideration**

As stated, Plaintiff's motion for reconsideration requests the court to reconsider its December 29, 2009 order finding that Plaintiff's claim was pleaded as an action in tort, rather than contract, and vacate the order dismissing the Connelly Defendants from the action on the basis that Plaintiff's claim against the Connelly Defendants was barred by the statute of limitations. As the basis for his request, Plaintiff reasons that the Superior Court's decision in *Coleman* constitutes an intervening change in the law. (*See* Doc. 102, p. 3 of 15.) The court disagrees.

**a.     Legal Standard**

Although not specifically recognized by any of the Federal Rules of Civil procedure, a motion for reconsideration may be viewed and considered under either Rule 59(e) or 60(b). *Klatch-Maynard v. Sugarloaf Tp.*, Civ. No. 3:06-cv-0845, 2013 WL 1789744, *2 (M.D. Pa. Apr. 26, 2013); *see also Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1352 (3d Cir. 1990) ("This court views a motion

characterized as a motion for reconsideration as the 'functional equivalent' of a Rule 59(e) motion to alter or amend a judgment."). Rule 59(e) provides that any motion to alter or amend judgment shall be filed no later than 28 days after entry of judgment. Fed. R. Civ. P. 59(e). A motion under Rule 60(b) must be made "within a reasonable time," and allows the court to relieve a party from a final judgment for reasons that justify relief. Fed. R. Civ. P. 60(b).[5]

A judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Klatch-Maynard*, 2013 WL 1789744 at *2 (citing *Max's Seafood Café, by Lou Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). It has been often stated that "[a] motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to re-litigate a point of disagreement between the Court and the litigant," *Gaballa v. Tanner*, Civ. No. 4:11-cv-1718, 2013 WL 2949350, *2 (M.D. Pa. June 14, 2013), nor is it a vehicle through which the litigant may raise "new arguments or present evidence that could have been raised prior to the entry of judgment," *Hill v. Tammac Corp.*, Civ. No. 1:05-cv-1148, 2006 WL 529044, *2 (M.D. Pa. Mar. 3, 2006).

---

[5] Because the court will deny Plaintiff's motion for reconsideration on the basis that *Coleman* does not warrant reconsideration, the court need not address whether the motion was made within a "reasonable time." *See* Fed. R. Civ. P. 60(c)(1); *accord Delzona Corp. v. Sacks*, 265 F.2d 157, 159 (3d Cir. 1959) (holding that "what constitutes a 'reasonable time' depends on the circumstances of each case"). Thus, the court need not determine whether Plaintiff's filing of the instant motion six months after the publication of the case upon which he relies was within a reasonable time. The court does note, however, that Plaintiff's explanation that his motion was made within a reasonable time because it was filed "[l]ess than 48 hours" after Defendant Downey alerted the court to *Coleman* on June 17, 2013 (Doc. 102, p. 2 of 15), presents an anemic argument in support of timeliness.

Rule 60(b)(6) provides the court with the ability to relieve a party from a final judgment for "any other reason" justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) is "available only in cases evidencing extraordinary circumstances." *Mason v. Zickefoose*, No. 13-1159, 2013 WL 2150912, *2 (3d Cir. May 20, 2013) (citing *Martinez-McBean v. Gov't of the V.I.*, 562 F.2d 908, 911 (3d Cir. 1977)). Although some courts have recognized that, under Rule 60(b)(6), "in the exceptional case . . . an action may be reinstated on account of an intervening change in the law," intervening developments in the law themselves "rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Harper v. Vaughn*, 272 F. Supp. 2d 527, 532 (E.D. Pa. 2003). Furthermore, extraordinary circumstances will not arise when the change of case law does not affect the integrity of the court's earlier judgment. Importantly, a Rule 60(b) motion may not be used as a substitute for an appeal, and legal error, without more, does not warrant relief under that provision. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 173 (3d Cir. 2004) ("Since legal error can usually be corrected by an appeal, that factor without more does not justify the granting of relief under Rule 60(b)(6).").

### b. **Application**

*Coleman* does not announce a change in the law relevant to this court's dismissal of Plaintiff's claims against the Connelly Defendants due to the expiration of the statute of limitations applicable to the type of action asserted in the complaint. Rather, the *Coleman* decision constitutes a change of law regarding *the extent of damages* recoverable in a legal malpractice breach of contract action. To be clear, the type of damages recoverable was not at issue for purposes of the Connelly

Defendants' motion to dismiss. Plaintiff now argues *Coleman* shows that the Pennsylvania Supreme Court would likely apply a four-year statute of limitations to a legal malpractice case sounding in contract. Notably, the applicable statute of limitations was not at issue in *Coleman*, and the Superior Court did not announce a change in law in that regard. Moreover, although Plaintiff's brief recites multiple federal and state court cases holding that "a four year statute of limitations applies to legal malpractice cases sounding in contract" (Doc. 98, pp. 15-18 of 23), neither the parties nor this court have ever disputed that a legal malpractice breach of contract claim is subject to Pennsylvania's four-year statute of limitations. Plaintiff apparently misunderstands the court's December 29, 2009 decision. In that decision, the court specifically acknowledged that "[a] plaintiff claiming breach of contract is subject to a four-year statute of limitations," 42 Pa. Cons. Stat. § 5525, but clarified that "claims do not fall within the four-year [breach of] contract limitation period merely because a contract may have existed between the parties, or because a contract between a plaintiff and a professional obliged the professional to exercise reasonable care." (Doc. 29, pp. 8, 10 of 12.) In other words, the court both recognized that a four-year statute of limitations applicable to breach of contract actions (*see* Doc. 29, p. 8 of 12), and that a legal malpractice claim *could* be brought under a contract theory (*see id*. at pp. 9, 10 of 12). However, the court found that the allegations *as set forth in the complaint* failed to establish a legal malpractice breach of contract action, because *Plaintiff's complaint failed to allege* a breach of the contract between Plaintiff and the Connelly Defendants. Plaintiff's cause of action clearly used tort-like language establishing duty of care, breach of that duty, direct and proximate causation, and damages, and adequately pleaded a professional

15

negligence action, that is, a tort.[6]  In short, the court did not hold that *it was impossible* for Plaintiff to bring a professional malpractice breach of contract action; rather, it held that Plaintiff *failed to plead* a professional malpractice breach of contract action.  Accordingly, Plaintiff's claim was not subject to the four-year statute of limitations applicable to breach of contract actions.

Somehow, Plaintiff contends that *Coleman* "makes it clear that a plaintiff does not need to point to a specific contractual provision violated by the defendant," and thus argues that *Saferstein v. Paul, Mardinly, Durham, James, Flandreau and Rodger, P.C.*, Civ. No. 96-cv-4488, 1997 WL 102521, *5 (E.D. Pa. Feb. 28, 1997), *aff'd without opinion,* 127 F.3d 1096 (3d Cir. 1997), a case this court cited in December 2009 for the proposition that "a malpractice plaintiff may not sidestep the two-year limitation on tort actions by pleading tort claims as breaches of contract" (Doc. 29, p. 10 of 12), is no longer good law, and the court should, therefore, vacate its December 29, 2009 order.  A closer examination of Plaintiff's argument, however, reveals that the case upon which he relies is actually *Gorski v. Smith*, 812 A.2d 683 (Pa. Super. Ct. 2002), a case Plaintiff cited in his brief in opposition to the Connelly Defendants' motion to dismiss for the proposition that a plaintiff need not plead a breach of a specific instruction to properly plead a professional malpractice action in assumpsit.  (*See* Doc. 6, pp. 6, 8 of 28.)  In *Gorski*, the Pennsylvania Superior Court stated:

---

[6]  As stated, the civil cover sheet executed by Plaintiff's counsel made clear that the action, as asserted, was one sounding in tort, not contract.  (*See* Doc. 1-3.)  Plaintiff's attempt to re-characterize the nature of his action as sounding in contract rather than tort is further belied in light of Plaintiff's own original description.  Nevertheless, notwithstanding Plaintiff's own classification, for both the reasons set forth in the court's December 29, 2009 memorandum (Doc. 29) and the reasons reiterated herein, the court independently determines that Count I was properly asserted as a tort action.

> [A] plaintiff's successful establishment of a breach of
> contract claim against an attorney . . . does not require
> proof by a preponderance of the evidence that an attorney
> failed to follow a specific instruction of the client. . . . [I]f
> a plaintiff demonstrates by a preponderance of the
> evidence that an attorney has breached his or her
> contractual duty to provide legal service in a manner
> consistent with the profession at large, then the plaintiff
> has successfully established a breach of contract claim
> against the attorney.

812 A.2d at 697. *Gorski* was decided by the Superior Court several years prior to

this court's December 29, 2009 order, thus, it cannot be considered a change in

controlling law. Although Plaintiff now asserts the court should have followed

*Gorski*'s requirements rather than those set forth in *Saferstein*, Plaintiff chose not to

appeal the court's December 29, 2009 decision. Of course, even assuming the court

made an error of law, it is well-settled that a Rule 60(b)(6) motion is an

inappropriate substitute for an appeal, and that a legal error, without more, does not

warrant the granting of such a motion. *See Selkridge*, 360 F. 3d at 173. Moreover,

*Gorski* is a Pennsylvania Superior Court decision, and not a Supreme Court

decision, and although the decisions of intermediate appellate courts are afforded

due weight, it is less than clear that *Gorski* was controlling. Indeed, even following

this court's December 29, 2009 decision, federal courts applying Pennsylvania

substantive law to professional malpractice breach of contract actions continued to

hold that plaintiffs "may not repackage a negligence-based malpractice claim under

an assumpsit theory to avoid the statute of limitations." *See, e.g., Javaid v. Weiss*,

Civ. No. 4:11-cv-1084, 2011 WL 6339838, *5-6 (citing *Stacey v. City of Hermitage*,

Civ. No. 2:02-cv-1911, 2008 WL 941642, *7 (W.D. Pa. Apr. 7, 2008) ("The

gravamen of the [a]mended [c]omplaint is that [the d]efendants failed to exercise the

appropriate standard of care and [the p]laintiff cannot repackage the claim under an assumpsit theory to . . . avoid the two-year statute of limitations."); *IBEW Local 380 Pension Fund v. Buck Consultants*, Civ. No. 03-cv-4932, 2008 WL 269476, *9 n. 5 (E.D. Pa. Jan. 30, 2008) ("Failure to perform a service with the requisite level of professional care typically constitutes a claim of negligence, not breach of contract."); *Storm v. Golden*, 538 A.2d 61, 65 (Pa. Super. Ct. 1988) ("[A]ppellant's assumpsit claim is not a true contract cause of action but sounds in negligence by alleging [that attorney] failed to exercise the appropriate standard of care.")). Rather, it remained consistent that, in a claim based on breach of an attorney-client agreement, the attorney's liability "must be assessed under the terms of the contract." *See, e.g., Vadovsky v. Treat*, Civ. No. 3:08-cv-1415, 2010 WL 2640156, *6 (M.D. Pa. June 11, 2010) (citing *Fiorentino v. Rapoport*, 693 A.2d 208, 213 (Pa. Super. Ct. 1997)). Accordingly, while there is intermediate appellate court support for Plaintiff's argument, the court can neither conclude it made a clear error of law by dismissing the Connelly Defendants nor that *Coleman* is an intervening change in controlling law.

Based on the foregoing, the court neither finds that *Coleman* constitutes a change in the controlling applicable law, nor that the court made a clear error of law by dismissing the Connelly Defendants. Moreover, even if it had, a Rule 60(b)(6) motion is inappropriate to challenge a such an error under the circumstances presented herein. For these reasons, the court will deny Plaintiff's motion for reconsideration of its December 29, 2009 order dismissing the Connelly Defendants.

## 2. Motion for Judgment on the Pleadings

Defendant Downey's motion for judgment on the pleadings accurately notes the import of *Coleman*. Specifically, Defendant Downey asserts that, under *Coleman*, Plaintiff was entitled, through a breach of contract action, to collect the full amount of damages suffered, an amount no longer restricted by *Bailey*'s limitation to the amount paid as attorney's fees. (*See* Doc. 95, pp. 6-7 of 12.) Thus, Defendant Downey contends, the entirety of the alleged damages, including the loss of value of his stock, were recoverable under both negligence and breach of contract legal malpractice claims. (*Id*.) Defendant reasons that, because the only difference between the tort and contract causes of action is the applicable statute of limitations (*see* Doc. 95, p. 6 of 12),[7] the court erroneously found that Plaintiff's claim was one for tort rather than assumpsit, and that the two-year statute of limitations applied. Based on this premise, Defendant argues that Plaintiff still had a viable claim for breach of contract against the Connelly Defendants when he filed his complaint to initiate these proceedings on July 6, 2009, and therefore contends that he cannot be held to be the proximate cause of Plaintiff's damages. In other words, Defendant Downey argues that his failure to file a lawsuit against the Connelly Defendants was inconsequential, because Plaintiff could have recovered the entirety of damages he suffered due to the Connelly Defendant's negligence at the time he initiated the instant lawsuit. The court disagrees.

---

[7] This statement embodies exactly what troubles the court. Specifically, if it is well-settled that aggrieved clients may assert a professional malpractice action sounding in either breach of contract or tort, and that the only difference is whether the claim is subject to a two- or four-year statute of limitations, why would any plaintiff file such a claim in tort? It is this illogical consequence which prevents the court from agreeing with either Plaintiff or Defendant Downey. (*See also supra* text accompanying note 3.)

### a.   Legal Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c).  Judgement on the pleadings is appropriate if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (citing *Soc'y Hill Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).  In determining a motion for judgment on the pleadings, a court considers "the pleadings and attached exhibits, undisputedly authentic documents relied on by plaintiffs and attached to the motion, and matters of public record." *Sportscare of Am., P.C. v. Multiplan, Inc.*, Civ. No. 2:10-cv-4414, 2013 WL 1661018, *8 (D.N.J. Apr. 17, 2013) (citing *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010)).  As with a motion to dismiss and motion for summary judgment, the court must view the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party, and determine whether the pleadings show that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Sikirica*, 416 F.3d at 220.

### b.   Application

Viewing the facts in the light most favorable to Plaintiff as the non-moving party, the court is unable to conclude Defendant Downey is entitled to judgment as a matter of law.  In reaching its conclusion, the court notes the following.  First, as stated, the cause of action against the Connelly Defendants asserted in Plaintiff's complaint, judged by its substance rather than its label, supported a claim for professional negligence: a tort subject to Pennsylvania's two-

year statute of limitations. The allegations contained in Plaintiff's complaint did not support a claim for breach of contract, as there is no allegation that the Connelly Defendants violated any contractual term.[8] Thus, whether Plaintiff *could have* asserted a breach of contract action against the Connelly Defendants based on their failure to call certain witnesses at the August 4, 2004 hearing is not clear from the record; however, the record is clear that Plaintiff's complaint did not assert such an action.[9]

Moreover, the pleadings do not otherwise compel a conclusion that Plaintiff's claims sounding in tort against the Connelly Defendants were barred

---

[8] As stated above, the court acknowledges that, according to the Pennsylvania Superior Court, "there automatically arises a contractual duty on the part of the attorney to render . . . legal services in a manner that comports with the profession at large" when an attorney enters into a contract to provide legal services, and therefore, "a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large." *Gorski*, 812 A.2d at 694. Nevertheless, without the Pennsylvania Supreme Court directly addressing the issue, the court finds more persuasive the reasoning set forth in *Saferstein*, 1997 WL 102521 at *5, which was recently reiterated in *Javaid*, 2011 WL 6339838 at *5. As the *Javaid* court stated, "[I]f allegations of a contractual relationship between plaintiff and defendants, and of an express or implied term of the contract establishing an obligation to exercise reasonable care, were to suffice to state a breach-of-contract malpractice case, the two year limitations statute for tort actions would be a dead letter in . . . malpractice cases." *Javaid*, 2011 WL 6339838 at *6 (quoting *Sherman Indus., Inc. v. Goldhammer*, 683 F. Supp. 502, 506 (E.D. Pa. 1988)).

[9] At the risk of being repetitive, but for the sake of being clear, the court did not parse through the record to determine whether the Connelly Defendant's actions could have supported a claim for legal malpractice based on the terms of the contract. All the court determined was that Plaintiff's complaint alleging that the Connelly Defendants "acted in deviation from the standard of care of a reasonable attorney and breached their duties they owed to [Plaintiff]" failed to adequately set forth a breach of contract claim. (*See* Doc. 29, p. 9 of 12 (citing Doc. 1, ¶ 65).) Thus, while the court recognized aggrieved clients *may* bring a breach of contract action against their former attorneys for legal malpractice, the court simply determined Plaintiff's claim, *as pleaded*, was one for professional negligence, not breach of contract. Thus, the law of the case is not that Plaintiff *did not have* a valid breach of contract claim against the Connelly Defendants. (*See* Doc. 95, ¶¶ 9-10 of 12.) If anything, the law of the case in this regard is that Plaintiff did not *assert* a valid breach of contract claim against the Connelly Defendants. Indeed, the court only determined whether a breach of contract claim was adequately pleaded; it never determined whether such a claim existed based on the Connelly Defendant's actions.

21

when he first sought the assistance of Defendant Downey. Whether Plaintiff's professional negligence claims against the Connelly Defendants were already barred at the time Defendant Downey owed to Plaintiff a duty of care will depend on the date of accrual of Plaintiff's legal malpractice claim against the Connelly Defendants, which remains a genuine issue of material fact.[10] Thus, it is not clear whether Plaintiff had a claim directly available against the Connelly Defendants other than the professional negligence claim that Defendant Downey never filed, despite his being specifically retained to do so.[11] By way of example and assuming, *arguendo*, that the Connelly Defendants were negligent in failing to call certain witnesses at the August 2, 2004 hearing, and that Plaintiff did not realize his injury until Judge Morrow's July 7, 2005 order invalidating the PSA, Plaintiff had a viable professional negligence claim to assert against the Connelly Defendants as late as July 9, 2007, which postdates Plaintiff's retaining Defendant Downey. In that case, Defendant Downey's failure to file a claim before that date would have caused Plaintiff's otherwise valid claims to be barred by the two-year statute of limitations applicable to tort actions. Given these questions of material fact, it can hardly be said that Defendant Downey is entitled to judgment as a matter of law.

---

[10] In reversing this court's grant of summary judgment in favor of Defendant Downey, the Third Circuit held that "reasonable minds could disagree in determining whether [Plaintiff] knew or should have known, through the exercise of reasonable diligence, of his alleged injury as early as August 2, 2004." (Doc. 37-1, p. 27 of 28.) Of course, if Plaintiff did not know of his alleged injury until July 7, 2005, the date on which the order invalidating the PSA was entered, the date of accrual of Plaintiff's action against the Connelly Defendants benefits from nearly an additional year.

[11] The Contingent Fee Agreement, attached to Plaintiff's complaint at Exhibit E, specifically states that "[Plaintiff] retains [Defendant Downey] to *institute, prosecute, negotiate and compromise claims or actions as may be deemed advisable by [Defendant Downey] in [Plaintiff]'s best interest to recover damages from [the Connelly Defendants]*." (Doc. 1, Ex. E.)

To reiterate, the facts, when viewed in the light most favorable to Plaintiff, establish that: (1) the Connelly Defendants were professionally negligent in failing to call witnesses at the August 2, 2004 hearing; (2) Plaintiff did not discover his injury until Judge Morrow's July 7, 2005 order invalidating the PSA; (3) Plaintiff contacted Defendant Downey on July 31, 2006; (4) Plaintiff retained Defendant Downey to "institute, prosecute, negotiate and compromise claims to recover damages from [the Connelly Defendants]" on March 30, 2007; (5) the statute of limitations on Plaintiff's professional negligence action against the Connelly Defendants expired on July 9, 2007; and (6) Defendant Downey did not file the claim contemplated by the March 30, 2007 agreement. In light of these facts, Plaintiff may have had a viable professional negligence claim against the Connelly Defendants, a claim that Defendant Downey never filed. Therefore, it is not clear that Defendant Downey is entitled to judgment as a matter of law on the pleadings. Accordingly, the court will deny Defendant Downey's motion.

## III.        Conclusion

In short, the court reiterates that (1) Plaintiff's complaint failed to adequately plead a legal malpractice breach of contract action against the Connelly Defendants; and (2) Plaintiff's negligence claim against the Connelly Defendants was barred by Pennsylvania's two-year statute of limitations as late as July 9, 2007. In addition, the court finds, for the purposes of the instant motions, that (3) *Coleman* does not constitute a controlling change in applicable law; (4) Plaintiff retained Downey before the two-year statute of limitations applicable to a professional negligence action against the Connelly Defendants expired; and (5) Defendant

23

Downey never filed a legal malpractice action against the Connelly Defendants, despite his being specifically retained to do so.  Accordingly, the court will deny both Plaintiff's motion for reconsideration and Defendant Downey's motion for judgment on the pleadings.

Two orders in accordance with the foregoing will be docketed separately.


S/SYLVIA H. RAMBO
United States District Judge

Dated: August 5, 2013.