# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICHOLAS KNOPICK,** | : |
| Plaintiff | : Civil No. 1:09-CV-1287 |
| v. | : |
| **PHILIP A. DOWNEY,** | : |
| Defendant | : Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

In this civil action invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, Plaintiff filed a complaint alleging that two groups of attorneys committed legal malpractice related to their representations of Plaintiff in connection with a property settlement agreement and legal malpractice action arising therefrom. Presently before the court is yet another motion filed by Defendant Downey, in which he now seeks to file a third-party complaint against Plaintiff's current counsel. (Doc. 119.) For the following reasons, the motion will be denied.

## I. **Background**

Because the court writes primarily for the parties, and because the facts of record have been summarized by this court in five separate memoranda (*see, e.g.*, Doc. 29 (granting Connelly Defendants' motion to dismiss); Doc. 32 (granting Defendant Downey's motion for summary judgment); Doc. 88 (denying Defendant Downey's second motion for summary judgment following remand); Doc. 107 (denying Defendant Downey's motion for judgment on the pleadings and Plaintiff's motion for reconsideration); Doc. 121 (denying Defendant Downey's motion for certification to file an interlocutory appeal)), the court will only outline the facts essential to this memorandum.

### A. Facts

On May 11, 1998, Plaintiff separated from his wife pursuant to a Property Settlement Agreement ("PSA"). According to Plaintiff, at the time he and his wife entered into the PSA, his wife was fully aware of all his assets, which included approximately two million dollars worth of stock. Plaintiff also alleged that his wife was aware, at the time of the PSA, that the stock was encumbered by a loan.

Plaintiff filed for divorce on July 30, 1999, and Plaintiff's wife thereafter challenged the validity of the PSA claiming that the agreement was invalid because she was unaware of the extent of Plaintiff's assets. On October 31, 2001, Plaintiff retained the Connelly Defendants as his counsel. A hearing on the PSA's validity was held on August 2, 2004, before the Honorable Kathy A. Morrow of the Perry County Court of Common Pleas. According to Plaintiff, prior to that date, he informed the Connelly Defendants that several witnesses were available to testify that his wife was aware of the stock at the time she entered into the PSA; however, none of these witnesses were called at the hearing. On July 5, 2005, Judge Morrow issued an order invalidating the PSA, finding that Plaintiff had failed to provide his wife with a full and fair disclosure of his assets. On August 29, 2005, Plaintiff discharged the Connelly Defendants.

On July 31, 2006, Plaintiff contacted Defendant Downey wishing to have his case reviewed for any potential malpractice claims against the Connelly Defendants. Defendant Downey contacted the Connelly Defendants, requesting information regarding their representation of Plaintiff at the August 2, 2004 hearing. On March 30, 2007, Defendant Downey and Plaintiff entered into a contingent fee

agreement, which defined the scope of representation as follows: "[Plaintiff] retains [Defendant Downey] to institute, prosecute, negotiate and compromise claims or actions as may be deemed advisable by [Defendant Downey] in [Plaintiff]'s best interest to recover damages from [the Connelly Defendants]." Defendant Downey never filed a malpractice suit against the Connelly Defendants, and on February 25, 2008, Defendant Downey informed Plaintiff that he would not pursue a legal malpractice claim against the Connelly Defendants because Plaintiff was "limited to a claim for breach of contract" and that the statute of limitations on that claim was "two years," which had begun to run on August 2, 2004, when the Connelly Defendants failed to call potentially relevant witnesses at the hearing.

### B. Procedural History

Plaintiff initiated this case by filing a complaint on July 6, 2009. The complaint named two sets of defendants, and brought, what Plaintiff labeled as, a breach of contract claim against the Connelly Defendants in connection with their state court representation of Plaintiff in the PSA proceedings (Count I), and a legal malpractice (Count II) and breach of contract claim (Count III) against Defendant Downey in connection with his failure to adequately prosecute Plaintiff's legal malpractice claim against the Connelly Defendants. (*See* Doc 1.)

On July 22, 2009, the Connelly Defendants filed a motion to dismiss (Doc. 4), which the court granted on December 29, 2009, on the basis that the applicable two-year statute of limitations[1] had expired prior to the complaint's July 22, 2009 filing date. (Doc. 29.) In arriving at its decision, the court found that,

---

[1] The court found that the two-year statute of limitations for legal malpractice claims applied to Plaintiff's claim against the Connelly Defendants. (*See* Doc. 29, pp. 9-10.)

despite Plaintiff labeling Count I as breach of contract against the Connelly Defendants, the allegations contained therein were more properly asserted as an action sounding in tort rather than contract. Specifically, the court reasoned:

> These allegations, plainly read, employ tort-like language and obligations rather than contract-like obligations, thus, leading the court to conclude that the gist of the action is one of tort not contract.

(*Id.* at p. 9 of 12.) Thus, although the court recognized that a plaintiff may bring a malpractice claim under both contract and tort theories of liability, it held that Plaintiff's claim arose in tort, and applied Pennsylvania's two-year statute of limitations applicable to malpractice tort claims, 42 Pa. Cons. Stat. Ann. § 5524, rather than the four-year statute of limitations applicable to contract claims, 42 Pa. Cons. Stat. Ann § 5525. (*See id*.) Relevant to the instant motion, Plaintiff neither sought to file an amended complaint properly stating a viable cause of action for breach of contract nor appealed the court's ruling.

On October 21, 2009, Defendant Downey filed both his answer (Doc. 13) and a motion for summary judgment on the two claims asserted against him (Doc. 15), which the court granted on January 25, 2010, on the basis that the statute of limitations had expired on Plaintiff's claims against the Connelly Defendants before Plaintiff retained Defendant Downey (Doc. 32). Plaintiff appealed that ruling (*see* Doc. 34), and on April 13, 2011, the United States Court of Appeals for the Third Circuit reversed and remanded, finding that reasonable minds could differ as to the date on which Plaintiff discovered his injury (Doc. 37). On remand, Defendant Downey filed a second motion for summary judgment, on the basis that the Connelly Defendant's did not commit malpractice because the invalidity of the PSA was due

to Plaintiff's own fraud (Doc. 49), which the court denied on May 6, 2013, finding that a genuine issue of material fact existed as to whether the Connelly Defendants committed malpractice by failing to call a certain witness who would have provided support for Judge Morrow to find that Plaintiff's wife was adequately aware of the couple's finances (Doc. 88).

Following a case management conference, the court issued a revised case management order on June 11, 2013. (Doc. 93.) The order set a fact discovery deadline of December 16, 2013, and listed the matter for trial to commence on May 5, 2014. (*Id*.) In light of the multiple motions already filed, the court prohibited the filing of any further dispositive motions without leave of court. (*Id*.) On June 17, 2013, Defendant Downey filed a motion for judgment on the pleadings (Doc. 94),[2] which requested judgment in his favor on the basis that Plaintiff had a viable claim against the Connelly Defendants for all of his alleged harm at the time Plaintiff filed suit against Defendant Downey. (Doc. 95, p. 2 of 12.) On August 5, 2013, the court denied Defendant Downey's motion, concluding that the record was not clear whether Plaintiff had a claim available against the Connelly Defendants other than the professional negligence claim that Defendant Downey never filed. (Docs. 107 & 108.) On August 20, 2013, Defendant Downey filed a motion requesting the court certify its August 5, 2013 order for an interlocutory appeal (Doc. 112), which the court denied on October 21, 2013, concluding that an immediate appeal would not materially advance the ultimate termination of the litigation. (Docs. 121 & 122.)

---

[2] The court permitted this motion be filed as Defendant Downey indicated his intention of filing such a motion during the June 11, 2013 case management conference.

Defendant Downey filed the instant motion on October 11, 2013. (Doc. 119.) In his motion, Defendant Downey acknowledges that he is beyond the time permitted to file a third party complaint by both the applicable Federal Rules of Civil Procedure and Local Rules of Court, but requests the court nevertheless permit him to file a third-party complaint against Plaintiff's current counsel ("Counsel"). (Doc. 120, p. 6 of 9.) Defendant Downey's proposed claim against the would-be third-party defendants arises from Counsel's failure to properly plead a breach of contract action against the Connelly Defendants. (*See* Doc. 119-1, ¶¶ 17, 21.)[3] The single count contained in the proposed third-party complaint asserts Counsel was negligent in their representation of Plaintiff, and in support thereof, Defendant Downey avers, *inter alia*, as follows:

> 13. [Plaintiff] retained [Counsel] to institute a breach of contract claim against the Connelly Defendants and breach of contract and negligence malpractice claims against [Defendant] Downey.
>
> \* \* \*
>
> 16. [Counsel] owed [Plaintiff] a duty to possess and employ the skill and knowledge that ordinarily is employed by a professional.
>
> 17. [Counsel] failed to properly plead a breach of contract claim on [Plaintiff]'s behalf, resulting in [Plaintiff]'s breach of contract claim being dismissed.
>
> \* \* \*

---

[3] The court notes Defendant Downey's motion, as originally filed, pleaded an alternative basis for Counsel's negligence, to wit, Counsel's failure to appeal this court's December 29, 2009 order dismissing the claims against the Connelly Defendants. (Doc. 117-1, ¶ 20.) This alternative basis no longer appears in the corrected motion. (*See* Doc. 119.)

> 20. If [Counsel] had properly plead[ed] [Plaintiff]'s breach of contract claim against the Connelly Defendants, and if [Plaintiff] had prevailed against the Connelly Defendants, then the Connelly Defendants would be solely liable to [Plaintiff].
>
> 21. Accordingly, [Counsel]'s negligence was the proximate cause of harm to [Plaintiff] and [Defendant] Downey, was a substantial factor in bringing about harm to [Plaintiff] and [Defendant] Downey, and significantly increased the risk that harm to [Plaintiff] and [Defendant] Downey would occur.
>
> 22. Accordingly, [Counsel] are liable to [Defendant] Downey for Plaintiff's claims against [Defendant] Downey alleged in the Complaint.

(Doc. 110-1, ¶¶ 13, 16-17, 20-22.) Thus, Defendant Downey appears to allege Counsel committed malpractice for their breach of the duty of care they owed to Plaintiff, and seeks contribution from Counsel for any liability he may incur if he is found to have committed malpractice. (*Id*. at ¶¶ 22-23.)

In support of his motion, Defendant Downey argues that his delay in filing the motion is excusable because the basis for his claim against Counsel arises from Plaintiff's testimony during his deposition on September 5, 2013. (Doc. 120, p. 6 of 9.) The portion of the deposition cited in support of Defendant Downey's claim against Counsel is set forth in the proposed third-party complaint as follows:

> Q: Now, do you believe that you had a contract with the Connelly firm to perform legal services?
>
> A: Yes.
>
> \* \* \*

> Q: And did you repeatedly inform the Connelly firm of witnesses that would prove that you provided a full and fair disclosure of your assets to Mrs. Knopick?
>
> A: Yes.
>
> Q: And the next part of that says that, "Attorneys Kadel and Connelly failed to investigate these witnesses or to call them at the August 2, 2004 hearing." Do you see that?
>
> A: Yes.
>
> Q: Okay. And was that true that Attorneys Kadel and Connelly failed to investigate these witnesses or call them at the August 2, 2004 hearing?
>
> A: I can't attest to whether or not they investigated them, but I know they didn't show up at the hearing.
>
> Q: So it's true that they failed to call those witnesses at the August 20–, August 2, 2004 hearing?
>
> A: Yes. . . .
>
> \* \* \*
>
> Q: And as you – do you believe that it was a part of your contract with the Connelly firm that they were supposed to investigate the witnesses that you gave them and call them at the August 2, 2004 hearing?
>
> A: Yes.
>
> \* \* \*
>
> Q: Do you believe that as part of the contract you told someone at the Connelly firm about these witnesses when you signed your agreement?
>
> A: Yes.

(Doc. 119-1, ¶ 11.) Essentially, Defendant Downey justifies the timing of his attempt to implead Counsel by arguing it was first during Plaintiff's deposition when

8

he discovered that the Connelly Defendants breached Plaintiff's specific instructions, at which time he realized that there existed a basis for a breach of contract action against the Connelly Defendants. (*See* Doc. 120, p. 5 of 9.) Defendant Downey reasons that, because the deposition demonstrates a breach of contract action existed, and because Counsel failed to adequately plead such a claim in this action, Counsel was negligent in their representation of Plaintiff, while simultaneously allowing the Connelly Defendants out of the case, effectively placing all liability, if any, on Defendant Downey's shoulders to bear alone.

Plaintiff filed a response in opposition on October 25, 2013, arguing that the motion is grossly untimely, and that permitting Defendant Downey to implead Counsel at this stage of the litigation would disrupt the proceedings and prejudice Plaintiff. (Doc. 124.) Defendant Downey filed his reply on November 12, 2013.[4] In his reply, Defendant Downey argues that Plaintiff's deposition testimony not only explained the specific terms of his contract with the Connelly Defendants but also demonstrated the original agreement was modified orally. (*See* Doc. 127, p. 2 of 12.) Thus, the matter has been fully briefed and is ripe for the court's consideration.

## II.        **Legal Standard**

Defendant Downey's motion for leave to file a third-party complaint invokes Federal Rule of Civil Procedure 14(a). Rule 14(a) provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a

---

[4] The court notes that Defendant Downey's reply is untimely. *See* M.D. Pa. L.R. 7.7; Fed. R. Civ. P. 6. Nevertheless, the court will overlook the delay in filing the reply, and consider the arguments raised therein.

nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). Moreover, Local Rule 14.1 provides that:

> A motion by a defendant for leave to join a third-party defendant under Fed.R.Civ.P. 14(a) shall be made within three (3) months after an order has been entered setting the case for trial, or within six (6) months after the date of service of the moving defendant's answer to the complaint, whichever shall first occur.

M.D. Pa. L.R. 14.1. However, Local Rule 14.3 permits the court, in its discretion, to suspend the deadlines set forth in Local Rule 14.1 upon a showing of good cause. *See* M.D. Pa. L.R. 14.3; *see also* M.D. Pa. L.R. 1.3 (stating that "[w]hen a judge of this court issues any order in a specific case which is not consistent with these rules, such order shall constitute a suspension of these rules for such case only and only to the extent that it is inconsistent.").

The purpose of Rule 14(a) is "to permit additional parties whose rights may be affected by the decision in the original action to be joined and brought in so as to expedite the final determination of the rights and liabilities of all of the interested persons in one suit." *Naramanian v. Greyhound Lines, Inc.*, Civ. No. 07-cv-4757, 2010 WL 4628096, *2 (E.D. Pa. Nov. 15, 2010) (quoting *Glens Falls Indem. Co. v. Atl. Bldg. Corp.*, 199 F.2d 60, 63 (4th Cir. 1952)). Because the Rule also aims to reduce duplicative litigation, *see Schwab v. Erie Lackawanna R.R. Co.*, 438 F.2d 62, 67 (3d Cir. 1971), federal courts liberally grant leave to join third parties in the interest of judicial economy, *Gonzalez v. Angelus Sanitary Canning Mach. Co.*, Civ. No. 09-cv-1455, 2010 WL 4514332, *2 (M.D. Pa. Nov. 2, 2010). In order to utilize the procedure of Rule 14, a third-party plaintiff must demonstrate

some substantive basis for its claim. *Pitcavage v. Mastercraft Boat Co.*, 632 F. Supp. 842, 845 (M.D. Pa. 1985). Moreover, the Third Circuit has held that:

> A third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to defendant. If the claim is separate or independent from the main action, impleader will be denied.

*FDIC v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994). Accordingly, in a diversity action, the court must apply state law in order to determine if a third-party plaintiff has raised a proper substantive basis for its claim. *See Robbins v. Yamaha Motor Corp.*, 98 F.R.D. 36, 38 (M.D. Pa. 1983) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)).

If there is a proper substantive basis for the filing of a third-party complaint, the court exercises its discretion in determining whether it will permit the filing of the third-party complaint. *See Doland v. Berrios*, Civ. No. 11-cv-1783, 2013 WL 3511421, *2 (M.D. Pa. July 11, 2013). In doing so, the court considers: (1) the timeliness of the motion; (2) the probability of trial delay; (3) the possible prejudice to the plaintiff; and (4) the complication of issues at trial. *See Gonzalez*, 2010 WL 4514332 at *2 (citing *Schlegel v. Wilson-Cook Medical, Inc.*, Civ. No. 05-cv-0660, 2007 WL 465528, *5 (M.D. Pa. Feb. 8, 2007); *Con-Tech Sales Defined Ben. Trust v. Cockerham*, 715 F. Supp. 701, 704 (E.D. Pa. 1989)).

### III. Discussion

Defendant Downey argues that he should be permitted to file a third-party complaint against Plaintiff's current counsel because Counsel committed malpractice by not properly prosecuting the action against the Connelly Defendants,

11

and therefore, caused Defendant Downey to be solely liable to Plaintiff if ultimately found liable at all. Defendant Downey's substantive basis for the filing of a third-party complaint appears to be contribution.[5] Plaintiff does not meaningfully challenge whether Defendant Downey can assert such cause of action against Counsel. (*See generally* Doc. 124.) The issue, therefore, is whether the court should exercise its discretion in permitting Defendant Downey to file a third-party complaint against Counsel. Upon consideration of the consequences impleading Counsel would have on the four-year-old case, the court will deny Defendant Downey's motion for leave to file his third-party complaint.

Defendant Downey properly acknowledges the belated nature of his request, but argues that his delay is excusable because he did not know of the "specific terms of [Plaintiff']'s alleged contract with the Connelly Defendants that should have been plead[ed] by [Counsel] until [Plaintiff] testified at his deposition on September 5, 2013." (Doc. 120, p. 6-7 of 9 (emphasis in original).) Defendant Downey further argues that Counsel will not suffer prejudice by the belated impleader, because Counsel have been aware of their potential liability and that little additional discovery would have to be conducted. (*See id.* at p. 6 of 9.) The court finds this argument unpersuasive.

Each of the four factors weigh against granting Defendant Downey's motion. First, the motion is unquestionably untimely. The case was initiated on July

---

[5] Pursuant to Pennsylvania law, a right to contribution arises only among joint tortfeasors, *i.e.*, "two or more persons jointly or severally *liable in tort* for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." *See* 42 Pa. Con. Stat. Ann. § 8322. Pennsylvania does not recognize a right to contribution in a breach of contract case. *See Unique Tech., Inc. v. Micro Stamping Corp.*, Civ. No. 02-cv-6649, 2003 WL 21652284, *3 (E.D. Pa. Apr. 15, 2013). Whether this affects Defendant Downey's rights, if any, against Counsel is beyond the scope of this memorandum.

6, 2009, over four years ago. Pursuant to Local Rule 14.1, Defendant Downey was required to file a motion seeking leave to file his third-party complaint by April 21, 2010.[6] Defendant Downey's October 11, 2013 motion was filed approximately three-and-a-half years too late. Thus, this factor weighs against permitting the belated impleader.

Second, permitting the requested impleader would most certainly cause trial to be delayed. As stated, trial is set for May 5, 2014. In anticipation of that trial term, the court set multiple deadlines, several of which will soon expire, including the December 16, 2013 deadline for fact discovery. The court does not find believable Defendant Downey's assertion that "little – if any – additional discovery will be required as a result of the joinder." (Doc. 120, p. 8 of 9.) Indeed, this case has already been subject to a significant amount of discovery, and the court cannot assume Counsel will be satisfied with defending an action on the record as it currently exists. To the contrary, Counsel, as a third-party defendant, would be not only entitled to engage in necessary discovery, but also to file dispositive motions and retain their own experts addressing whether their decisions fell below the acceptable professional standard of care. Moreover, the third-party claim will require discovery on whether there was an oral modification to the Plaintiff's contract with the Connelly Defendants. In any event, regardless of the necessity of additional discovery, the inquiry focuses on the probability of a delay to trial. The court is hard-pressed to conclude trial will not be delayed further by joining a party

---

[6] As Plaintiff accurately identifies, Defendant Downey's request is late even using the later date contemplated by Local Rule 14.1. The court most recently set the matter for trial in its June 11, 2013 case management order. Thus, Defendant Downey's motion was due on September 11, 2013. The motion, filed on October 11, 2013, was still a month too late even if the court utilized the later date.

13

to the action at this stage of the litigation. Thus, this factor weighs against permitting the belated impleader.

Third, Plaintiff will most certainly suffer substantial prejudice if the court permits Defendant Downy to implead Counsel. In his brief in support, Defendant Downey fails to address the potential prejudice Plaintiff will suffer if the court were to grant the motion.[7] Plaintiff will undoubtedly suffer prejudice, as he will be forced to retain new counsel in this four-year-old case.[8] Counsel have represented Plaintiff throughout this litigation, and are presumably intimately familiar with the proceedings. Forcing Plaintiff to retain new counsel, who will necessarily be required to get up to speed in a short amount of time as not to delay trial, would be both unfair and extremely costly to Plaintiff. Moreover, the events at the heart of this action occurred over nine years ago. Certainly, as time progresses, memories continually fade (*see, e.g.*, Doc. 120-1, p. 6 of 7), and witnesses, such as the attorney who drafted the PSA, may become unavailable. The court will not increase the likelihood that Plaintiff's presentation of his case will be further impaired. Thus, this factor weighs against permitting the belated impleader.

Fourth, the case will become significantly more complex if the court permits Defendant Downey to implead Counsel. This is already a case within a case,

---

[7] The court notes Defendant Downey argues *Counsel* will not suffer prejudice because "they have presumably been aware of their own potential liability long before their client's recent deposition testimony based on their privileged communications with him." (Doc. 120, p. 8 of 9.) The court need not address the merits of this statement, as it entirely fails to address the proper inquiry, *i.e.*, the probability *the plaintiff* will suffer prejudice.

[8] Defendant Downey argues in his reply that Plaintiff will be required to obtain new counsel because a conflict-of-interest exists regardless of whether Counsel are impleaded. Whether a conflict-of-interest exists between Counsel and Plaintiff is beyond the scope of this memorandum, and in any event, not dispositive to the court's disposition.

whereby Plaintiff will have to necessarily prove that the Connelly Defendants committed malpractice in their representing him in the PSA proceedings, and that Defendant Downey committed malpractice by failing to properly prosecute the action against the Connelly Defendants. Granting the relief Defendant Downey requests would necessarily require the trier of fact to assess another level of representation, and require Plaintiff to prove a case within a case within a case. Moreover, in his reply, Defendant Downey argues Plaintiff's deposition testimony demonstrated that the contract between Plaintiff and the written Connelly Defendants was orally modified. While the court refrains from considering the merits of this theory, it notes that, at the very least, permitting the impleader of Counsel may require an additional determination of fact regarding whether the written contract was, in fact, modified to include these specific instructions. Such a determination would undoubtedly require another factual finding for the trier of fact to consider, therefore complicating the issues involved. Thus, this factor weighs against permitting the belated impleader.

      Although the court will stop short of characterizing Defendant Downey's most recent motion as mendacious, the court would be remiss not to express its skepticism regarding Defendant Downey's asserted justification for his significant delay in seeking to implead Counsel. As stated, Defendant Downey argues the delay should be excused, because he first learned a breach of contract claim against the Connelly Defendants may have existed (and accordingly, first realized Counsel failed to properly assert the same) during Plaintiff's deposition on September 5, 2013. This representation is belied by the record. Defendant Downey knew of these alleged specific instructions from Plaintiff and the Connelly

15

Defendants well before Plaintiff's deposition testimony. Indeed, Defendant Downey testified during his deposition on November 26, 2012, that, "in exchange for [Plaintiff] paying [the Connelly Defendants] money to represent [him], they had agreed that they would introduce evidence he was going to give them."[9] (Doc. 124-1, p. 104 of 219.) Furthermore, a letter sent on February 25, 2008, from Defendant Downey to Plaintiff clearly stated Defendant Downey's opinion that he was "limited to a claim for breach of contract." (Doc. 1, Ex. F; *see also* Doc. 124, p. 116 of 219.)[10] Moreover, Defendant Downey knew his basis – and his intention to bring – the third-party claim against Counsel well before October 11, 2013. In the parties' joint case management plan, filed July 22, 2011, Defendant Downey represented that he:

> [I]ntends to cross claim against [Counsel] for legal malpractice, under a breach of contract theory as a result of [Counsel] having failed to:
>
> a. Properly plead a cause of action for legal malpractice;
>
> b. Failure to file an amended Complaint after being served with [the Connelly Defendant]'s Motion to Dismiss;

---

[9] Defendant Downey's retort that he prefaced his recollection during his deposition with his uncertainty does not change that he understood the contract to include, "in exchange for paying them money," the Connelly Defendants' agreed to call certain witnesses on Plaintiff's behalf." (Doc. 124-1, p. 104 of 219.)

[10] During his deposition, Defendant Downey stated:

Well, [Plaintiff] and I had discussed suing *in contract* for malpractice multiple times. And, in fact sometime around the time of this letter, I even sent him a draft complaint with factual allegations *alleging breach of contract*.

(Doc. 124, p. 116 of 219 (emphasis supplied).)

16

   c. Failure to timely perfect an appeal of this honorable court's dismissal of Plaintiff's claims against [the Connelly Defendants].

(Doc. 41, ¶ 1.80.) For these reasons, the court is disinclined to accept Defendant Downey's justification that he first learned of the specific terms of Plaintiff's contract with the Connelly Defendants on September 5, 2013. (*Contra* Doc. 120, p. 8 of 9.) Defendant Downey's delay is not excusable.[11]

## IV.   Conclusion

  Defendant Downey's motion seeking leave to file a third-party complaint against Plaintiff's counsel is well-beyond the deadlines set forth in Federal Rule of Civil Procedure 14 and Local Rule 14.1. Because the court finds that Defendant Downey's motion is extremely untimely, that impleading Counsel at this stage of the litigation would substantially prejudice Plaintiff, delay trial, and complicate issues, and that Defendant Downey's excuse for the delay is inadequate, the court concludes that Defendant Downey has failed to demonstrate good cause to permit the belated impleader. Accordingly, Defendant Downey's motion for leave to file a third-party complaint will be denied.

  An appropriate order will issue.

              s/Sylvia H. Rambo
              United States District Judge

Dated: November 12, 2013.

---

[11] The court misses the significance of Defendant Downey's inclusion of an unrelated attorney's response to Counsel's allegedly posting on an internet legal bulletin board related to the case. (*See* Doc. 127, p. 6 -7 of 12; Doc. 127-1.) The pages allotted by Local Rule 7.7 would be better suited by either focusing on the pertinent arguments or omitting such pestiferous material in its entirety.