IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NICHOLAS KNOPICK,** | : |
| **Plaintiff** | : Civil No. 1: 09-CV-1287 |
| v. | : |
| **PHILIP A. DOWNEY,** | : |
| **Defendant** | : **Judge Sylvia H. Rambo** |

### **M E M O R A N D U M**

In this civil action, Plaintiff has sued, *inter alia*, his former attorney, Defendant Philip A. Downey ("Defendant") for legal malpractice related to Defendant's representation of Plaintiff in connection with a prior legal malpractice suit against a set of Plaintiff's former attorneys who have already been dismissed from this suit by application of the two-year statute of limitation applicable to tort actions in Pennsylvania. Presently before the court is Defendant's motion to bifurcate this trial into two phases, wherein Defendant requests that the court order structure trial so that the parties would first present evidence *to the court* regarding whether the Connelly Attorneys[1] committed malpractice in the underlying lawsuit before presenting evidence *to the jury* regarding whether Defendant committed malpractice by not initiating a lawsuit against the Connelly Attorneys. (*See* Doc. 144.) Plaintiff opposes Defendant's motion in a single-page brief in opposition. (Doc. 153.) Despite the perfunctory nature of Plaintiff's response, the court will deny Defendant's motion.

---

[1] Plaintiff initially sued John J. Connelly, Jr., Esquire, Susan M. Kadel, Esquire, and James, Smith, Durkin & Connelly, L.L.P., (collectively "the Connelly Attorneys") due to their actions related to the representation of Plaintiff in his divorce proceedings. The Connelly Attorneys, however, were dismissed as defendants from this action on the basis of the statute of limitation on December 29, 2009. (Doc. 29.)

**I.        Background**

The court has little doubt that the parties are familiar with the facts and procedural history of this case and finds no reason to repeat it here beyond the general structure of this layered legal malpractice action.  Specifically, Plaintiff claims that Defendant committed malpractice for failing to timely file a malpractice lawsuit against Plaintiff's former attorneys, the Connelly Attorneys, who represented him during his divorce proceedings.   Plaintiff alleges that the Connelly Attorneys committed legal malpractice by failing to call certain witnesses at a hearing regarding the validity of a property settlement agreement he had entered into with his wife, Darlene Knopick ("Ms. Knopick").  The parties recognize that, to prevail against Defendant, Plaintiff must first prove that a meritorious legal malpractice claim existed at the time he sought the services of Defendant.  Thus, as aptly acknowledged by Defendant, Plaintiff must prove that, had the witnesses been called, Judge Kathy A. Morrow of the Perry County Court of Common Pleas would have upheld the property settlement agreement on July 7, 2005, rather than invalidating the agreement for lack of full and fair disclosure.  Assuming the trier of fact finds that Judge Morrow would have upheld the agreement but for the actions – or rather, non-actions – of the Connelly Attorneys, Plaintiff would then have to prove that Defendant's conduct fell below the appropriate standard of care when he failed to initiate a lawsuit against the Connelly Attorneys before the expiration of the two-year statute of limitation.  Defendant's motion requests the first issue be decided by the court rather than the jury.


**II.**     **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 42, a trial court may, in its discretion, bifurcate a trial. The rule provides as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b). The decision to bifurcate, and the manner in which bifurcation should be ordered, is left to the trial court's informed discretion and must be decided on a case by case basis. *See Idzojtic v. Pennsylvania R.R. Co.*, 456 F.2d 1228, 1230 (3d Cir. 1972) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages."). In exercising its discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984). The moving party bears the burden of establishing that bifurcation is appropriate. *See Innovative Office Prods., Inc. v. Spaceco, Inc.*, Civ. No. 05-cv-4037, 2006 WL 1340865, *1 (E.D. Pa. May 15, 2006).

The Third Circuit has noted that "this court has heretofore cast its lot with the views expressed by the Advisory Committee that bifurcation 'be encouraged where experience has demonstrated its worth,' but that 'separation of issues for trial is not to be routinely ordered.'" *Lis v. Robert Packer Hosp.*, 579 F.2d 819, 824 (3d Cir. 1978). The Third Circuit has also noted that "bifurcation is *appropriate* where litigation of one issue . . . may eliminate the need to litigate a second issue." *In re Bayside Prison Litig.*, 157 F. App'x 545, 547-48 (3d Cir. 2005) (emphasis in original). However, bifurcation is certainly not required in circumstances where the

"issues are so closely interwoven that the plaintiff would have to present the same evidence twice in separate trials." *Id*. at 548. Indeed, bifurcation "remains the exception rather than the rule." *Spinturf, Inc. v. Southwest Recreational Indust., Inc.*, Civ. No. 01-cv-7158, 2004 WL 96751, *1 (E.D. Pa. Jan. 15, 2004) (citing *Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000)).

**III.     Discussion**

Defendant's motion requests that the court exercise its discretion to bifurcate trial on the issue of the Connelly Attorneys' actions and to conduct a bench trial on the underlying case within the instant lawsuit prior to conducting a separate jury trial on Defendant's alleged malpractice. Defendant contends that the court is "in a better position than a jury to review the underlying transcripts and perform the required legal analysis" to determine whether, if certain witnesses had been called, Plaintiff would have prevailed at the hearing regarding the validity of the property settlement agreement. Defendant heavily relies on Pennsylvania civil practice that provides for family law motions to be "exclusively decided by judges and not juries." (Doc. 145, p. 2 of 3.) Defendant further argues that the case is "far too complex for a lay jury to read the hearing transcripts of Darlene[']s and [Plaintiff]'s testimony, listen to additional testimony, and perform legal analysis to determine whether the [Perry County Court of Common Pleas] *judge* would have decided in [Plaintiff's] favor." (*Id*. at pp. 1-2 of 3 (emphasis in original).)

Plaintiff responds that bifurcating the issue of the Connelly Attorneys' conduct is inappropriate because "[w]hether Plaintiff would have prevailed is clearly an issue of fact and, as such, should be left to the jury." (Doc. 153.) The court agrees with Plaintiff that whether the Connelly Attorneys committed malpractice is

4

an issue of fact that can be decided properly by the jury and concludes that Defendant has failed to sustain his burden to show that bifurcation is warranted.

Defendant's contention that bifurcation is appropriate is grounded on the basis of Pennsylvania civil practice dealing with family law matters. Establishing causation in a legal malpractice case arising from a divorce action presents unique conceptual difficulties. Contested divorce cases in Pennsylvania are decided by a judge sitting in equity, guided by statutes, and to a lesser extent, the common law. The essence of Defendant's argument is that, because an assessment of causation in a legal malpractice case stemming from a contested divorce involves issues of law that are within the exclusive province of the courts, a judge rather than a jury must decide whether Plaintiff has proved causation.

This case is not one that hinges on the application of law. Instead, this case requires a determination of whether additional factual evidence presented by the Connelly Attorneys at the hearing before Judge Morrow may have supported Plaintiff's position that his wife was fully aware of the couple's assets. The jury is competent and able to assess the conduct of the Connelly Attorneys. The case of *Hess v. Hess*, 580 A.2d 357 (Pa. Super. Ct. 1990), involved, as here, an action by an ex-wife against an ex-husband for fraud in connection with husband's nondisclosures as to the value of certain marital property in negotiating a marital property settlement agreement. The Court of Common Pleas of Delaware County entered judgment *on the jury's verdict*. Similarly, in *Nathan v. Nathan*, 49 Pa. D. & C. 4th 260 (Phila. Cnty. Ct. Com. Pl. July 24, 2000), an action by an ex-wife against her ex-husband for fraudulent misrepresentation in connection with the value of shares of a closely held corporation, the *jury* found that husband had misrepresented the value of the shares to wife. Indeed, the type of scenario presented in this lawsuit here is more akin to

fraud in the inducement of a contract rather than a divorce case typically placed before a judge. Thus, that Pennsylvania matrimonial law issues are typically handled by a judge rather than a jury does not compel the court to bifurcate this case and hold a bench trial.

Moreover, Defendant fails to support his argument that this case is "far too complex" to be tried by a jury. As stated, this case hinges on whether the Connelly Attorneys could have presented evidence to establish that Ms. Knopick was fully engaged in the couple's financial affairs and demonstrate that the circumstances indicated that Ms. Knopick had knowledge of the general value of the couple's assets. Thus, the determination of whether the Connelly Attorneys could have presented evidence to defend the validity of the property settlement agreement will be based on the jury's acceptance or rejection of the testimony proffered by certain witnesses. *See Paroly v. Paroly*, 876 A.2d 1061, 1066 (Pa. Super. Ct. 2005) ("[T]he case law provides that where the circumstances indicate that a spouse has knowledge of the general value of the couple's assets, an agreement will be upheld."). This is not a case that hinges on the application of legal principles that are properly reserved for the court, and factual determinations remain the province of a jury. Indeed, this court has previously acknowledged the factual nature of the contested issue regarding the Connelly Attorneys' actions:

> When a disclosure clause is present, a court is bound to accept that full and fair disclosure was made, absent a showing of fraud, duress, or misrepresentation. The party asserting that fraud, duress, or misrepresentation was present bears the burden of proof by clear and convincing evidence. Witness testimony that [Ms. Knopick] was aware of the stock, and the approximate value thereof, may have acted as a counterweight against any evidence [Ms. Knopick] put forth to prove fraud. *This presents a genuine issue of material fact*.

*Knopick v. Downey*, 91 Fed. R. Evid. Serv. 400, *20 (M.D. Pa. May 6, 2013) (emphasis supplied) (citations omitted). Thus, this factual question is within the province of a jury, and Defendant has not convinced the court that the jury will be unable to weigh the evidence presented and determine whether the Connelly Attorneys committed malpractice during the property settlement agreement proceedings. Thus, Defendant has not demonstrated that this case is inappropriate for the jury's consideration.

Importantly, Defendant fails to convince the court that the various considerations of convenience, prejudice to the parties, expedition, and economy of resources weigh in favor of bifurcating trial. Indeed, Defendant does not address any of these considerations in his brief. Accordingly, the court cannot conclude that Defendant has sustained his burden in demonstrating that bifurcation is appropriate.

Lastly, Defendant's analogy to an appellate malpractice case for the proposition that the underlying case would be best resolved by the court rather than the jury is unconvincing. This is a legal malpractice action and, as in most legal malpractice cases, proximate cause is determined by the jury: if the malpractice action is not one focused exclusively on the appellate process or issues of law, but is focused on malpractice that occurred during litigation, then proximate cause often is an issue of fact. It is logical that, because appeals are generally based on and resolved as a matter of law and not fact, in a legal malpractice case arising from a missed opportunity to appeal – the type of case cited by Defendant in the instant motion – proximate causation must be decided by a judge rather than a jury. The same is not true when, as here, the legal malpractice case arises from the failure of the attorney to investigate and properly present the case in the first instance. That Pennsylvania civil procedure favors judges to resolve domestic relations cases does

not change this logic.  Thus, Defendant's argument that this case should follow the procedure employed in appellate malpractice cases remains unconvincing and certainly does not require the court to grant Defendant's motion for bifurcation. (*Contra* Doc. 161, p. 2 of 2 ("Based on the foregoing, Defendant's motion to bifurcate *must* be granted." (emphasis supplied)).)

**IV.    Conclusion**

Based on the foregoing, the court concludes that Defendant has failed to demonstrate that the considerations of convenience, prejudice to the parties, expedition, and economy of resources weigh in favor of bifurcating trial. Accordingly, the court will exercise its discretion and deny Defendant's motion to bifurcate trial.  The entire matter will be submitted to the jury.

<div style="text-align: right;">s/Sylvia H. Rambo<br>United States District Judge</div>

Dated:  April 3, 2014.